**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GILBERT MICHEL VILLEGAS,
                          *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,

                          *Respondent.*

No. 04-74162

Agency No.
A92-351-558

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
April 10, 2008—Pasadena, California

Filed April 23, 2008

Before: Cynthia Holcomb Hall, Thomas G. Nelson, and
Barry G. Silverman, Circuit Judges.

Opinion by Judge Hall

## COUNSEL

Venu Alagh and Marie Johnson, Korenberg, Abramowitz & Feldun, Sherman Oaks, California, for the petitioner.

Blair T. O'Connor, U.S. Department of Justice, Civil Division, Washington, D.C., for the respondent.

## OPINION

HALL, Circuit Judge:

### I.

### INTRODUCTION

Petitioner Gilbert Michel Villegas is a citizen of Mexico with severe bipolar disorder, who was lawfully admitted to the United States. In 1996, he committed second degree robbery in violation of California Penal Code § 211. The government initiated removal proceedings because of this offense. Villegas conceded removability and sought withholding of removal and relief under the Convention Against Torture ("CAT"). His theory was that if removed to Mexico, he would be unable to afford medications to control his disorder and likely wind up confined indefinitely in a Mexican mental institution, where conditions are deplorable.

The IJ denied relief. He held that the robbery conviction was a "particularly serious crime" that precluded withholding of removal. As to CAT relief, the IJ ruled that although Villegas testified credibly and presented uncontested evidence of inhuman conditions in Mexican mental institutions, those conditions did not amount to "torture" because nothing indicated that they were created with the specific intent to harm the mentally disabled. The BIA summarily affirmed.

As we explain below, we lack jurisdiction to address the withholding claim. As to the CAT claim, we hold that the IJ correctly construed "torture" to require specific intent to inflict harm — intent which is not present on this record.

### II.

### FACTUAL AND PROCEDURAL BACKGROUND

Villegas was born in Mexico in 1968 and came to the United States when he was five years old. He was admitted

as a permanent resident in June 1990. Shortly thereafter, officials with Los Angeles County diagnosed Villegas with bipolar disorder. He now controls his symptoms through three forms of medication, which he pays for with benefits he receives through Medi-Cal and Social Security and with money he earns working as a handyman. Unmedicated, however, the disorder causes recurring emotional problems and makes Villegas "lose touch with reality."

During a time in 1996 when he was off his normal medication, Villegas robbed a man by using a screwdriver, which "nicked" the victim's hand during a struggle. Because of this incident, Villegas was charged with second degree robbery in violation of California Penal Code § 211.[1] He pled guilty on January 22, 1997, and was sentenced to two years in prison.

Based on this conviction, the government charged that Villegas was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(F) (defining "aggravated felony" to include "a crime of violence . . . for which the term of imprisonment [is] at least one year"). After failing to convince the government to drop the case as a matter of prosecutorial discretion, Villegas conceded removability and sought relief in the forms of withholding of removal and protection under the CAT. He testified that if he were removed, he would be unable to afford his medications and that without them, his bipolar disorder would "take[ ] over." Therefore, Villegas claimed, he was likely to wind up confined by the Mexican government in a mental institution, where conditions are deplorable.

The IJ admitted substantial evidence about the conditions in Mexican mental institutions, including (1) the sworn testi-

---

[1]The statute provides: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal Code § 211.

mony of a Dr. Robert Okin from another immigration matter, (2) the transcript of a "20/20" television program entitled "The Abandoned Ones," and (3) the transcript of an NPR radio address. Dr. Okin's testimony indicated that no judicial review exists when a patient is involuntarily committed in a Mexican mental institution, and that once admitted, the patient becomes a ward of the hospital. According to Dr. Okin, this meant that once admitted, the person is "going to stay there for life by and large."

The "20/20" report included stories of terrible squalor inside the facilities:

> Feces and urine are everywhere. The men walk through it all day, often with their bare feet. There is no toilet paper. The tap water runs only sporadically. There's no soap and there's no towels. It's nauseating. The smell is . . . unbearable.

The report also found that patients in the children's ward were consistently tied to their beds or otherwise restrained, resulting in weakened limbs and, in some cases, amputations. The NPR report was similar, describing conditions where "the mentally ill and mentally retarded are lumped together, sometimes chained, ill-clothed, abused, and otherwise dehumanized." It also noted that even according to Mexican officials, the majority of people in the institutions did not need to be there. The NPR story summarized the conditions in Mexican facilities as "rock bottom" when compared to other countries.

The IJ admitted this evidence and deemed Villegas to have testified credibly, but he ultimately denied relief. He deemed Villegas' robbery conviction a "particularly serious crime" that precluded withholding of removal. As to the CAT, the IJ expressed some uncertainty about whether Villegas had demonstrated a likelihood that he would actually end up confined in a Mexican mental institution. The IJ made no explicit finding on this issue, however, as he ruled that Villegas' request

for CAT protection "turn[ed] on whether he has demonstrated that the authorities in Mexico have a specific intent to torture person[s] similarly situated." Citing *In re J-E-*, 23 I. & N. Dec. 291 (BIA 2002) (en banc), which denied CAT relief to a petitioner who risked incarceration in similarly horrible conditions in Haitian prison, the IJ ruled that CAT relief required specific intent to inflict harm, and that without such intent, indefinite confinement under subhuman conditions in a Mexican mental facility did not amount to torture. He therefore denied CAT relief as well.[2] The BIA summarily affirmed.

## III.

## DISCUSSION

Villegas does not contest the classification of his robbery conviction as an aggravated felony and does not dispute that he is removable. He only attacks the IJ's conclusions concerning withholding of removal and relief under the CAT.

### A. Withholding of Removal

[1] We lack jurisdiction over Villegas' claims concerning withholding of removal. "Withholding of removal" refers to relief under the rule that the Attorney General may not remove an alien to a country where the alien's life or freedom would be threatened because of his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Withholding is not available, however, if "the Attorney General decides" that the alien "having been convicted . . . of a particularly serious crime is a danger to the community of the United States." *Id.* § 1231(b)(3)(B)(ii). Crimes resulting in imprisonment for at least five years are "particularly serious" per se, while the

---

[2]The IJ also denied Villegas' requests for asylum and a discretionary waiver of removal under former INA § 212(c). Villegas does not challenge these rulings here.

Attorney General can determine that any aggravated felony, regardless of the sentence imposed, is particularly serious. *See id.*; *Singh v. Ashcroft*, 351 F.3d 435, 439 (9th Cir. 2003).

**[2]** Here, even though Villegas' robbery conviction carried a sentence of only two years, the IJ characterized it as "particularly serious" and an indication that Villegas was a danger to the community. This determination is committed by statute to the Attorney General's discretion, so this court lacks jurisdiction to review it. *Matsuk v. INS*, 247 F.3d 999, 1002 (9th Cir. 2001); *see* 8 U.S.C. § 1252(a)(2)(B)(ii) (precluding judicial review of any decision "the authority for which is specified . . . to be in the discretion of the Attorney General"). Moreover, since the determination is not a "question[ ] of law" within the court's jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(D), the court also lacks jurisdiction because Villegas is removable for having committed an aggravated felony. *See* 8 U.S.C. § 1252(a)(2)(C); *id.* § 1227(a)(2)(A)(iii).

## B.  CAT

Villegas levels two main attacks against the IJ's denial of CAT relief. First, he argues that the IJ should not have required him to demonstrate that Mexican officials had a "specific intent" to harm mentally disabled people, and that it should be enough that officials' actions concerning mental institutions had the foreseeable result of inflicting harm. Second, he contends that even if specific intent is the proper standard, his evidence was adequate and the IJ erred in concluding otherwise. We have jurisdiction to address both arguments because where, as here, "an IJ does not rely on an alien's conviction in denying CAT relief and instead denies relief on the merits, none of the jurisdiction-stripping provisions — § 1231(b)(3)(B), § 1252(a)(2)(B)(ii), or § 1252(a)(2)(C) — apply to divest this court of jurisdiction." *Morales v. Gonzales*, 478 F.3d 972, 980-81 (9th Cir. 2007) (citing *Unuakhaulu v. Gonzales*, 416 F.3d 931, 936-37 (9th Cir. 2005)). Both arguments lack merit, however.

**[3]** Congress implemented the CAT in 1998 when it passed the Foreign Affairs Reform and Restructuring Act ("FARRA"). Pub. L. No. 105-277, Div. G, Title XXII, § 2242, 112 Stat. 2681-822 (codified as a note to 8 U.S.C. § 1231). This implementing legislation provides that the United States will not "expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." *Id.* § 2242(a). An applicant for CAT relief has the burden "to establish that it is more likely than not that he . . . would be tortured if removed." *Al-Saher v. INS*, 268 F.3d 1143, 1147 (9th Cir. 2001) (quoting 8 C.F.R. § 208.16(c)(2)) (alteration in original).

Villegas argues that the IJ should have expansively construed "torture" to include "general intent" — that is, instances where an intentional action has the foreseeable result of inflicting severe harm on disabled people. To determine whether Villegas is correct, we look to the Convention's implementing regulations, which are "subject to" the "reservations, understandings, declarations, and provisos contained in the United States Senate resolution of ratification of the Convention." *Zheng v. Ashcroft*, 332 F.3d 1186, 1196 (9th Cir. 2003) (citing § 2242(b) of the FARRA).

**[4]** When these sources are consulted, Villegas' argument fails quickly. The regulations define torture as:

> any act by which severe pain or suffering, whether physical or mental, is *intentionally inflicted* on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is

> inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1) (emphasis added). The regulations further provide that "to constitute torture, an act must be *specifically intended* to inflict severe physical or mental pain or suffering." 8 C.F.R. § 1208.18(a)(5) (emphasis added). This squares exactly with the Senate ratification resolution, which provided: "[T]he United States understands that, in order to constitute torture, an act must be *specifically intended* to inflict severe physical or mental pain or suffering . . . ." 136 Cong. Rec. S17,486-01, S17,491 (1990) (emphasis added).

Moreover, the IJ here relied upon *In re J-E-*, 23 I. & N. Dec. 291, 298 (BIA 2002) (en banc), which construed the CAT's implementing regulations to require specific intent. The BIA's decision in *J-E-* is not lightly disregarded. "[J]udicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.' " *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (citation omitted).

**[5]** Every other circuit to consider the question has concluded that "torture" under the CAT requires specific intent to inflict harm. *See Pierre v. Gonzales*, 502 F.3d 109, 113-119 (2d Cir. 2007); *Auguste v. Ridge*, 395 F.3d 123, 148 (3d Cir. 2005); *see also Majd v. Gonzales*, 446 F.3d 590, 597 (5th Cir. 2006) (rejecting a CAT claim because "[m]ost of the suffering [the petitioner] described was inflicted without any specific intent"). The only case to the contrary, which Villegas relies on here, is *Zubeda v. Ashcroft*, 333 F.3d 463, 474 (3d Cir. 2002). But the Third Circuit later repudiated this portion of *Zubeda* as dicta and reached a contrary result, *Auguste*, 395 F.3d at 147-48, and the Second Circuit has rejected *Zubeda* as unpersuasive, *Pierre*, 502 F.3d at 117-18. We also decline to follow it.

Finally, we note that defining "torture" to require specific intent to inflict harm does not conflict with our holding in *Zheng*. In that case, we held that for a government official to "acquiesce" in acts of torture by a private party within the meaning of 8 C.F.R. § 1208.18(a)(1), the public official need not have actual knowledge of, or willfully accept, the torture. *See* 332 F.3d at 1194-97. Rather, "acquiescence" requires only that a public official have an awareness of private torture, which includes willful blindness to the act. *See id.* But *Zheng* specifically addressed official acquiescence in torture by private parties, so it should not be read to hold that the torture itself can exist without specific intent of *someone* — either the government official or the private party to whom the official acquiesces — to inflict severe harm. *See Pierre*, 502 F.3d at 118 ("A private actor's behavior can constitute torture under the CAT without a government's specific intent to inflict it if a government official is aware of the persecutor's conduct and intent and acquiesces in violation of the official's duty to intervene . . . . But in that scenario, there is specific intent — the intent of the private actor.").

**[6]** Accordingly, we hold that to establish a likelihood of torture for purposes of the CAT, a petitioner must show that severe pain or suffering was specifically intended — that is, that the actor intend the actual consequences of his conduct, as distinguished from the act that causes these consequences. *Id.*; *cf.* Black's Law Dictionary 825 (8th ed. 2004) (defining "general intent" as "[t]he intent to perform an act even though the actor does not desire the consequences that result").

**[7]** Applying this standard is relatively simple here. Villegas cites nothing in the record that indicates specific intent, and we find nothing. While Villegas is correct that a variety of evidence showed that Mexican mental patients are housed in terrible squalor, nothing indicates that Mexican officials (or private actors to whom officials have acquiesced) created these conditions for the specific purpose of inflicting suffering upon the patients. Moreover, the record indicates that the

Mexican government has given human rights organizations free access to its mental institutions, and is taking steps to improve conditions. We agree with Villegas that we must assess the conditions as they currently exist. But the evidence of a desire to improve confirms the conclusion that, currently, the conditions in the Mexican mental health system exist not out of a deliberate intent to inflict harm, but merely because of officials' historical gross negligence and misunderstanding of the nature of psychiatric illness. Therefore, though certainly deplorable, the conditions do not amount to torture within the meaning of the CAT. This defeats the CAT claim.[3]

## IV.

## CONCLUSION

The petition is DISMISSED as to the claim for withholding of removal and DENIED as to the CAT.

---

[3]We do not decide whether the record compels the conclusion that Villegas would even end up in a Mexican mental institution. The IJ avoided making a finding on this topic, and "this court cannot affirm the BIA on a ground upon which it did not rely." *Navas v. INS*, 217 F.3d 646, 658 n.16 (9th Cir. 2000).