**NOT FOR PUBLICATION**

FILED

MAY 9 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JAVIER ADAME CHAVARIN, | No. 15-73518 |
| Petitioner, | Agency No. A039-805-421 |
| v. | |
| JEFFERSON B. SESSIONS III, Attorney General, | **MEMORANDUM**[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 7, 2017
Pasadena, California

Before:  M. SMITH and N.R. SMITH, Circuit Judges, and FEINERMAN,[**] District Judge.

Javier Adame Chavarin petitions for review of an order of the Board of

Immigration Appeals (BIA) affirming the decision of an Immigration Judge (IJ)

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Gary Feinerman, District Judge for the U.S. District Court for the Northern District of Illinois, sitting by designation.

denying his motion for administrative closure and his request for deferral of removal under the Convention Against Torture (CAT). We dismiss the petition as it pertains to administrative closure and deny Chavarin's request for deferral of removal under CAT.

Chavarin, a citizen of Mexico, lived for many years in the United States as a legal resident. In 2000, he was convicted of assault with a deadly weapon, imprisoned, and deported to Mexico upon his release. Family members (who live in and are citizens of the United States) placed him in a private mental health treatment facility in Tijuana due to his schizophrenia. Chavarin's time at the facility was very difficult; he was attacked by other residents and force-fed ineffective medication. After leaving the facility, he attempted to re-enter the United States, but was detained by the Department of Homeland Security and has remained in detention ever since.

Chavarin sought deferral of removal under CAT. In support, he offered his own testimony, the testimony of his family members, a report from Disability Rights International (DRI) detailing mistreatment of individuals in Mexican mental health facilities, and a declaration from an expert, Eric Rosenthal, opining that Chavarin would likely be subject to inhumane and degrading treatment in a mental health facility should he be returned to Mexico. The IJ found Chavarin's testimony credible, but nonetheless denied CAT relief on the ground that the

evidence did not demonstrate that the Mexican government or individual actors harbored a specific intent to engage in torture, and that Chavarin's suggestions as to why he was likely to be tortured were speculative. The IJ denied administrative closure on the ground that despite his mental illness, Chavarin was competent to proceed with the hearing. The BIA affirmed.

Torture under CAT is defined as:

> [A]ny act by which severe pain or suffering … is intentionally inflicted on a person [for a variety of enumerated purposes] … when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1). To constitute torture, "an act must be specifically intended to inflict severe … pain or suffering. An act that results in unanticipated or unintended severity of pain and suffering is not torture." 8 C.F.R. § 1208.18(a)(5). Specific intent exists where "the actor intend[s] the actual consequences of his conduct, as distinguished from the act that causes these consequences." *Villegas v. Mukasey*, 523 F.3d 984, 989 (9th Cir. 2008).

In *Villegas*, we considered the very question at issue here—whether conditions in Mexican mental health facilities can amount to torture for purposes of CAT—and found that the conditions, though poor, did not demonstrate a specific intent on the part of the Mexican government to cause severe pain or suffering, and thus did not amount to torture. *Id*. at 988-89. Chavarin contends

3

that while this may have been the case when *Villegas* was decided some eight years ago, the fact that the Mexican government has been on notice of the conditions in mental health facilities and that those conditions have not meaningfully improved has transformed what was mere negligence into a specific intent to cause severe pain and suffering. But as the IJ found, conditions at Mexican mental health facilities may be poor, but the DRI report also states that progress has been made. The IJ was permitted on the record to conclude that this progress defeats any notion that the Mexican government intends to cause severe pain and suffering, and substantial evidence thus supports the finding that there is no such intent.

Citing *Cole v. Holder*, 659 F.3d 762 (9th Cir. 2011), Chavarin contends that the IJ erred in failing to consider the Rosenthal declaration. *Cole* holds that where "potentially dispositive testimony and documentary evidence is submitted, the BIA must give reasoned consideration to that evidence." *Id*. at 772. But the IJ *did* consider the declaration; he just did not find it persuasive in light of the other record evidence. In particular, although the declaration suggested that it was virtually inevitable that Chavarin would end up in a public mental institution if removed to Mexico, the IJ correctly noted that Chavarin had *never* been involuntarily placed in a public institution, that his family members testified they would help him to the extent that they could, and that his only institutionalization

4

in Mexico had been in a private institution. Given this, the IJ acted well within his discretion in finding Rosenthal's conclusions unpersuasive.

Finally, Chavarin argues that the IJ erred in denying his motion for administrative closure based on his alleged incompetence to proceed. We lack jurisdiction to review a decision to deny administrative closure. *Diaz-Covarrubias v. Mukasey*, 551 F.3d 1114, 1118 (9th Cir. 2009).

Even if we accepted Chavarin's recasting of this challenge into a due process claim, his argument still fails because the IJ found that Chavarin was competent to proceed with counsel. In any event, removal proceedings may go forward even if the alien is incompetent, provided that appropriate safeguards are put in place. *See* 8 U.S.C. § 1229a(b)(3) ("If it is impracticable by reason of an alien's mental incompetency for the alien to be present at the proceeding, the Attorney General shall prescribe safeguards to protect the rights and privileges of the alien."); *Matter of M-A-M*, 25 I & N Dec. 474, 477 (BIA 2011) ("The Act's invocation of safeguards presumes that proceedings can go forward, even where the alien is incompetent, provided the proceeding is conducted fairly."). Here, safeguards were firmly in place, including frequent breaks to allow Chavarin to take his medication, the presence of three attorneys to represent him, and the involvement of his family members at the hearing. Moreover, the IJ did not make

adverse credibility determinations against Chavarin. Chavarin received the process he was due, so the IJ's decision to proceed did not violate due process.

**Petition for review DENIED in part and DISMISSED in part.**