# Matter of J-R-G-P-, Respondent

*Decided October 31, 2018*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Where the evidence regarding an application for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988), plausibly establishes that abusive or squalid conditions in pretrial detention facilities, prisons, or mental health institutions in the country of removal are the result of neglect, a lack of resources, or insufficient training and education, rather than a specific intent to cause severe pain and suffering, an Immigration Judge's finding that the applicant did not establish a sufficient likelihood that he or she will experience "torture" in these settings is not clearly erroneous.

FOR RESPONDENT: Munmeeth K. Soni, Esquire, Los Angeles, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: James T. Dehn, Associate Legal Advisor

BEFORE: Board Panel: GREER and WENDTLAND, Board Members; CROSSETT, Temporary Board Member

GREER, Board Member:

In a decision dated November 27, 2017, an Immigration Judge denied the respondent's application for deferral of removal pursuant to the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"). The respondent has appealed from that decision. The appeal will be dismissed.[1]

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who entered the United States without inspection at an unknown time and place. The Department of

---

[1] We acknowledge and appreciate the thoughtful arguments submitted on appeal by the parties and amici curiae.

Homeland Security ("DHS") initiated removal proceedings, in which the respondent requested protection from removal in the form of deferral of removal under the Convention Against Torture. The respondent did not claim that he had experienced past torture in Mexico. Instead, he asserted that given his mental health issues, he will be arrested and either imprisoned or committed to a mental health facility in Mexico, where law enforcement officials or mental health workers will subject him to harm rising to the level of torture. The Immigration Judge denied the respondent's application and ordered him removed from the United States.

On April 12, 2017, we held that in light of the respondent's limited ability to testify and assist counsel in his case, there was good cause to remand the record and continue the proceedings to allow his attorney to further develop the record. We also found clear error in the Immigration Judge's determination that the respondent's symptoms were not always readily apparent to others and that he had not shown a likelihood that he would come to the attention of authorities if he were returned to Mexico. More precisely, based on the respondent's mental health diagnoses, his behavior in court, his involuntary hospitalizations in the United States, and his interactions with the criminal justice system in this country, we concluded that it was more likely than not that his mental health symptoms would be evident in Mexico.

On remand, the Immigration Judge found that there is a likelihood that the respondent will be arrested and imprisoned and that it is more likely than not that he will be involuntarily committed to a mental health facility in Mexico. However, she again determined that he had not established that it is more likely than not that he will be "tortured" in Mexico, finding that there was insufficient evidence to show that Mexican authorities would have the specific intent to harm him in a penal or psychiatric institution. She therefore concluded that he had not met his burden to prove his eligibility for protection under the Convention Against Torture.

The DHS does not challenge the Immigration Judge's finding that there is a sufficient likelihood that the respondent will come to the attention of Mexican authorities based on his mental health issues and that he will be arrested, imprisoned, or involuntarily committed to a mental health facility in Mexico. The sole issue on appeal, therefore, is whether the respondent has shown that it is more likely than not that he will be "tortured" in pretrial detention, prison, or a mental health facility.[2]

---

[2]  The respondent argues on appeal that the Immigration Judge did not consider whether he would be tortured in a homeless shelter in Mexico. However, he did not meaningfully advance this basis for protection under the Convention Against Torture before the Immigration Judge. *See, e.g.*, *Matter of W-Y-C- & H-O-B-*, 27 I&N Dec. 189, 190 (BIA 2018) (declining to consider, for the first time on appeal, a basis for protection from removal that was not meaningfully advanced before the Immigration Judge).

An Immigration Judge's findings regarding the specific intent of individuals who may harm an applicant for protection under the Convention Against Torture in the country of removal, as well as what may or may not happen to the applicant in that country in the future, are findings of fact that we review for clear error. *See Matter of Z-Z-O-*, 26 I&N Dec. 586, 590 (BIA 2015); *Matter of D-R-*, 25 I&N Dec. 445, 453 (BIA 2011), *remanded on other grounds*, *Radojkovic v. Holder*, 599 F. App'x 646, 648 (9th Cir. 2015).

## II.  ANALYSIS

To qualify for deferral of removal under the Convention Against Torture, the respondent must prove that "it is more likely than not that he [will] be tortured" if he is arrested and put in prison or in a mental health facility in Mexico. *Quijada-Aguilar v. Lynch*, 799 F.3d 1303, 1308 (9th Cir. 2015) (quoting 8 C.F.R. § 1208.16(c)(2) (2015)).  Claims under the Convention Against Torture "must be considered in terms of the aggregate risk of torture from all sources, and not as separate, divisible . . . claims." *Id.*  However, to meet his burden, the respondent must show that each link in a "hypothetical chain of events is more likely than not to happen." *Matter of J-F-F-*, 23 I&N Dec. 912, 917 (A.G. 2006); *see also Haile v. Holder*, 658 F.3d 1122, 1131 n.9 (9th Cir. 2011).

### A.  Specific Intent To Inflict Torture

For an act to constitute "torture" it must be "*specifically intended* to inflict severe physical or mental pain or suffering." 8 C.F.R. § 1208.18(a)(5) (2018).[3]  As we stated in *Matter of J-E-*, 23 I&N Dec. 291, 299, 301 (BIA 2002), "torture" does not cover "negligent acts" or harm stemming from a lack of resources.  We held there that detention under substandard conditions in Haitian prisons would not constitute "torture" within the meaning of the Convention Against Torture because "there is no evidence that [Haitian authorities] are *intentionally and deliberately* creating and maintaining such prison conditions *in order to inflict torture*." *Id.* at 301 (emphases added).  Rather, the record in that case established "that Haitian prison conditions are the result of budgetary and management problems as well as the country's severe economic difficulties." *Id.*

---

[3]  This regulation is consistent with the resolution of the United States Senate ratifying the Convention Against Torture, which provides:  "[T]he United States understands that, in order to constitute torture, an act must be *specifically intended* to inflict severe physical or mental pain or suffering . . . ." 136 Cong. Rec. 36,198 (1990) (emphasis added).

A majority of the circuit courts have deferred to the interpretation we articulated in *Matter of J-E-* regarding the specific intent requirement of the Convention Against Torture. *See, e.g.*, *Oxygene v. Lynch*, 813 F.3d 541, 550 (4th Cir. 2016) (collecting cases). For instance, in *Villegas v. Mukasey*, 523 F.3d 984, 989 (9th Cir. 2008), the United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises, held that "to establish a likelihood of torture for purposes of the [Convention Against Torture], [an alien] must show that severe pain or suffering was *specifically intended*— that is, that the actor *intend the actual consequences* of his conduct, as distinguished from the act that causes these consequences." (Emphases added.)

In that case, the court considered a question similar to the one at issue here—namely, whether housing mental patients in the "terrible squalor" of a Mexican mental health facility would amount to "torture." *Id.* It concluded that even though the conditions in those facilities were "deplorable," they were not the result of a *specific intent* on the part of the Mexican Government to cause severe pain or suffering. Noting the Government's efforts to alleviate the situation, the Ninth Circuit stated that "the evidence of a desire to improve confirms the conclusion that, currently, the conditions in the Mexican mental health system exist not out of a deliberate intent to inflict harm, but merely because of officials' historical gross negligence and misunderstanding of the nature of psychiatric illness." *Id.* The court therefore concluded that subjecting patients to the poor conditions in Mexico's mental health facilities was not "torture" within the meaning of the Convention Against Torture.

In *Chavarin v. Sessions*, 690 F. App'x 924, 926 (9th Cir. 2017), the Ninth Circuit reaffirmed its holding in *Villegas*. The court rejected the applicant's assertion that the Mexican Government's failure to meaningfully improve poor conditions in mental health facilities "has transformed what was mere negligence into a specific intent to cause severe pain and suffering." *Id.* Recognizing a report finding that "progress has been made," the Ninth Circuit stated that this "defeats any notion that the Mexican government *intends* to cause severe pain and suffering, and substantial evidence thus supports the finding that there is no such intent." *Id.* (emphasis added). It therefore upheld our determination that the applicant had not shown a sufficient likelihood that the Government would torture him.

We likewise conclude that where the evidence regarding an application for protection under the Convention Against Torture plausibly establishes that abusive or squalid conditions in pretrial detention facilities, prisons, or mental health institutions in the country of removal are the result of neglect, a lack of resources, or insufficient training and education, rather than a specific intent to cause severe pain and suffering, an Immigration Judge's

finding that the applicant did not establish a sufficient likelihood that he or she will experience "torture" in these settings is not clearly erroneous. *See Cooper v. Harris*, 137 S. Ct. 1455, 1465 (2017) (stating that under review for clear error, a "finding that is 'plausible' in light of the full record—even if another is equally or more so—must govern"); *Matter of D-R-*, 25 I&N Dec. at 453–55 (holding that an Immigration Judge's choice between two plausible alternative interpretations of the record is not clearly erroneous).

## B. Respondent's Application

The Immigration Judge found that any extreme pain and suffering the respondent may experience as an arrestee, in prison, or in a mental health facility in Mexico will more likely than not result from a lack of resources, training, education, or negligence—rather than acts specifically intended to inflict severe pain or suffering upon the respondent. There is no clear error in that finding of fact. Accordingly, we will uphold the Immigration Judge's determination that the respondent has not shown that he is eligible for protection under the Convention Against Torture.

First, the Immigration Judge properly found that it is not more likely than not that the respondent will be tortured in either police custody or prison in Mexico. The Immigration Judge did not clearly err when she found that the record does not establish that Mexican police are targeting mentally incompetent individuals in that country for arrest and incarceration. Further, while the record indicates that detainees and prisoners with mental health issues often do not receive necessary medications and medical attention, it reflects that such appalling conditions result from a lack of resources and training to provide adequate medical and psychological care, rather than a *specific intent* to deprive detainees and prisoners of treatment.

Moreover, although the record indicates that some detainees and prisoners in Mexico have experienced physical abuse at the hands of officials, it is the respondent's burden to show that it is more likely than not that *he* will be subjected to this abuse and that this harm will rise to the level of torture. *See Matter of J-F-F-*, 23 I&N Dec. at 917. The record includes evidence that the Mexican Government has created additional pretrial detention facilities to reduce overcrowding, devoted more resources to training prison officials, instituted an ombudsman to oversee conditions in Mexico's prisons, and made other efforts to bring its prisons in line with international standards.

We will likewise affirm the Immigration Judge's finding that it is not more likely than not that the respondent will be tortured by health care workers in a Mexican mental health facility. As with the conditions in pretrial detention facilities and prisons in Mexico, the record reflects that the

conditions in that country's mental institutions are the result of limited options for controlling patients' violent behavior and a lack of resources and training—not a specific intent to inflict pain or suffering on patients. *See Villegas*, 523 F.3d at 989. Moreover, although the record establishes that some individuals committed to mental health facilities have experienced abuse, the respondent has not shown that such abuse is so common that it is more likely than not that he will personally experience it.

We recognize the testimony of the respondent's expert witness, which highlights instances where the Mexican Government has failed to take action to improve impoverished conditions or correct abusive conduct in some mental health facilities. However, the record reflects the Government's continued efforts to increase access to psychiatric care, emphasize the importance of community-based treatment options for individuals with mental health issues, and form commissions tasked with recommending improvements to that country's mental health facilities. Significantly, the respondent's expert witness worked for two of these commissions, reporting his observations of mental health facilities and recommending reforms based on his observations. This evidence supports the Immigration Judge's finding that the respondent has not shown a sufficient likelihood that Mexican health workers, with the acquiescence of a Government official, would have the specific intent to torture him. *Villegas*, 523 F.3d at 989; *Chavarin*, 690 F. App'x at 926; *Matter of J-E-*, 23 I&N Dec. at 301.

The evidence of record indicates that the substandard conditions in mental health facilities, pretrial detention, and prisons in Mexico are the result of neglect, lack of resources, or insufficient training and education. In light of this evidence, and recognizing the Mexican Government's efforts to improve those conditions, we will uphold the Immigration Judge's finding that the respondent has not shown that it is more likely than not that he will experience acts of torture specifically intended to inflict severe physical or mental pain or suffering on him by or at the instigation of, or with the consent or acquiescence of, a Mexican public official or an individual acting in an official capacity. *See* 8 C.F.R. § 1208.18(a)(1). Accordingly, because the respondent has not established that he is eligible for protection under the Convention Against Torture, his appeal will be dismissed.

**ORDER:** The appeal is dismissed.