# Matter of R-A-F-, Respondent

*Decided by Attorney General February 26, 2020*

U.S. Department of Justice
Office of the Attorney General

(1) The Board of Immigration Appeals should consider de novo the application of law to the facts of this case, including whether the deprivations that the respondent would be likely to encounter upon removal to Mexico would constitute "torture" within the meaning of the Department of Justice regulations implementing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994).

(2) To constitute "torture" under these regulations, an act must, among other things, "be specifically intended to inflict severe physical or mental pain or suffering." 8 C.F.R. § 1208.18(a)(5). "'[T]orture' does not cover 'negligent acts' or harm stemming from a lack of resources." *Matter of J-R-G-P-*, 27 I&N Dec. 482, 484 (BIA 2018) (citing *Matter of J-E-*, 23 I&N Dec. 291, 299, 301 (BIA 2002)).

(3) To constitute "torture," an act must also be motivated by "such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind." 8 C.F.R. § 1208.18(a)(1).

## BEFORE THE ATTORNEY GENERAL

Pursuant to 8 C.F.R. § 1003.1(h)(1)(i) (2019), I direct the Board of Immigration Appeals ("Board") to refer this case to me for review of its decision. With the case thus referred, I hereby vacate the Board's decision and remand this case for review by a three-member panel.

The Department of Homeland Security ("DHS") seeks to remove the respondent to Mexico, but the respondent contends that upon his return, he would be sent to a Mexican mental health care facility whose poor conditions rise to the level of "torture." The respondent therefore seeks deferral of removal under regulations implementing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994) ("CAT"). *See* 8 C.F.R. § 1208.17(a) (2019). Because the respondent was convicted of the attempted sexual abuse of a child, he is not eligible for asylum or withholding of removal, *see* section 208(b)(2)(A)(ii) of the Immigration and Nationality Act, 8 U.S.C.

§ 1158(b)(2)(A)(ii) (2018); 8 C.F.R. § 1208.16(d)(2)–(3) (2019), but he may qualify for deferral of removal, *see* 8 C.F.R. §§ 1208.16(c)(4), 1208.17(a).

To so qualify, "[t]he burden of proof is on [the respondent] to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 1208.16(c)(2).  In *Matter of R-A-F-*, the Board dismissed an appeal by DHS of the immigration judge's decision granting the respondent's application for deferral of removal.  The Board concluded that "we discern no clear error in the Immigration Judge's determination that the respondent established that it is more likely than not that he will be tortured by or at the instigation of or with the consent or acquiescence (including willful blindness) of a public official or other person acting in an official capacity in Mexico."  *Id.*, slip op. at 2.

The Board's decision was contrary to the law.  Although the Board reviews an immigration judge's factual findings for clear error, it reviews de novo "questions of law, discretion, and judgment and all other issues in appeals," including the application of law to fact.  8 C.F.R. § 1003.1(d)(3)(i), (ii); *see also* Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed. Reg. 54878, 54888–89 (Aug. 26, 2002) ("[T]he Board members will retain their 'independent judgment and discretion,' subject to the applicable governing standards, regarding the review of pure questions of law and the application of the standard of law to those facts."); *Cruz-Quintanilla v. Whitaker*, 914 F.3d 884, 889 (4th Cir. 2019) (recognizing that the Board "review[s] de novo 'all other issues,' including, in cases involving mixed questions of law and fact, the application of the governing legal standard to the facts found by the immigration judge").  The Board's conclusion that the immigration judge did not commit clear error improperly merged the factual and legal questions presented by the respondent's claim that he was likely to be tortured if removed to Mexico.  While the immigration judge's "prediction as to 'what would likely happen' to the [respondent] if removed" may have been a factual determination that the Board reviews only for clear error, "whether that predicted outcome satisfies the regulatory definition of 'torture' . . . constitutes a 'legal judgment' subject to de novo review, as it necessarily involves 'applying the law to decided facts.'"  *Cruz-Quintanilla*, 914 F.3d at 890 (quoting *Turkson v. Holder*, 667 F.3d 523, 528 (4th Cir. 2012)); *see also Myrie v. Att'y Gen. U.S.*, 855 F.3d 509, 516 (3d Cir. 2017) (recognizing that the Board reviews *de novo* "whether the likely harm qualifies as torture under the governing regulations"); *cf. Matter of Z-Z-O-*, 26 I&N Dec. 586, 591 (BIA 2015) ("[W]e will review de novo whether the underlying facts found by the

Immigration Judge meet the legal requirements for relief from removal or resolve any other legal issues that are raised.").[1]

On remand, therefore, the Board should consider de novo whether the deprivations that the immigration judge found the respondent likely to experience upon return to Mexico would rise to the level of torture under the governing CAT regulations and the relevant precedents. In doing so, the Board should keep in mind that, to constitute torture, "an act must be *specifically intended* to inflict severe physical or mental pain or suffering." 8 C.F.R. § 1208.18(a)(5) (2019) (emphasis added). The Board has previously recognized, in applying the specific intent requirement to another case in which the respondent claimed that the poor conditions in Mexican mental health facilities would constitute torture, that "'torture' does not cover 'negligent acts' or harm stemming from a lack of resources." *Matter of J-R-G-P-*, 27 I&N Dec. 482, 484 (BIA 2018) (citing *Matter of J-E-*, 23 I&N Dec. 291, 299, 301 (BIA 2002)). It is not enough to show that "the substandard conditions in mental health facilities, pretrial detention, and prisons in Mexico are the result of neglect, lack of resources, or insufficient training and education," particularly where the government is making "efforts to improve those conditions." *Id.* at 487.

The courts of appeals have affirmed this interpretation of the CAT regulations. In *Villegas v. Mukasey*, 523 F.3d 984 (9th Cir. 2008), for instance, the Ninth Circuit considered whether the "terrible squalor" of a Mexican mental health facility would amount to "torture." *Id.* at 989. The court concluded that, even though the reported conditions were "deplorable," they did not evince the kind of specific intent to cause pain and suffering that was required to establish torture. *Id.*; *see also, e.g.*, *Oxygene v. Lynch*, 813 F.3d 541, 548 (4th Cir. 2016) ("*In re J-E-* requires a CAT claimant to demonstrate that the state actor who mistreats him desires to cause his severe

---

[1] This case arises out of the United States Court of Appeals for the Tenth Circuit, which similarly recognizes that the Board reviews de novo the application of law to a given set of facts. *See, e.g.*, *Xue v. Lynch*, 846 F.3d 1099, 1105 (10th Cir. 2017) ("[T]he BIA has specifically determined that the ultimate resolution whether a given set of facts amount to persecution is a question of law reviewed de novo."). In reviewing the Board's decisions under the CAT, the Court of Appeals has recognized that "a request for protection under the CAT involves factual determinations reviewed for substantial evidence." *Htun v. Lynch*, 818 F.3d 1111, 1118 (10th Cir. 2016). But the court of appeals' deferential review of a final removal order differs from the Board's review of an immigration judge's decision. *Compare* 8 U.S.C. § 1252(b)(4) (2018), *with* 8 C.F.R. § 1003.1(d)(3); *see also Xue*, 846 F.3d at 1105–06 (recognizing the difference between the standard of review applied by the court of appeals and the Board). This distinction reflects the general "[j]udicial deference in the immigration context" to the Board's decisions, which give "ambiguous statutory terms concrete meaning through a process of case-by-case adjudication." *Negusie v. Holder*, 555 U.S. 511, 517 (2009) (internal quotations marks omitted).

pain and suffering, and is not merely negligent nor reckless as to the risk. . . . [T]his interpretation accords with the prevailing meaning of specific intent and reflects the likely wish of the President and Senate to incorporate that meaning into the CAT regulations."); *Auguste v. Ridge*, 395 F.3d 123, 153 (3d Cir. 2005) ("As the BIA found in *Matter of J-E-*, the prison conditions, which are the cause of the pain and suffering of the detainees, result from Haiti's economic and social ills, not from any intent to inflict severe pain and suffering on detainees by, for instance, creating or maintaining the deplorable prison conditions."); *Pierre v. Gonzales*, 502 F.3d 109, 111 (2d Cir. 2007) ("The failure to maintain standards of diet, hygiene, and living space in prison does not constitute torture under the CAT unless the deficits are sufficiently extreme and are inflicted by government actors (or by others with government acquiescence) intentionally rather than as a result of poverty, neglect, or incompetence.").

The Board should further address the remaining elements of the legal definition of torture, again considering de novo whether the facts as found by the immigration judge are sufficient to establish each element. Among other things, the respondent must show that the Mexican health workers who are alleged to engage in torture would do so "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). The respondent must also establish that the Mexican health workers would be motivated by "such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind." *Id.* Absent these determinations, a claim for protection from removal under the CAT must fail.

The Board on remand thus should review the respondent's claim consistent with the requirements of the CAT regulations and the governing precedent. *See Matter of J-R-G-P-*, 27 I&N Dec. at 487.