[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-10279

Non-Argument Calendar

_____

ABRAHAM BERNEZ-IBARRA,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A206-349-604

_____

Before ROSENBAUM, GRANT, and EDMONDSON, Circuit Judges.


PER CURIAM:


Abraham Bernez-Ibarra ("Petitioner"), a native and citizen of Mexico, petitions for review of a final order by the Board of Immigration Appeals ("BIA"). The BIA affirmed the Immigration Judge's ("IJ's") denial of Petitioner's applications for withholding of removal under the Immigration and Nationality Act ("INA") and for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). No reversible error has been shown; we deny the petition.


I.    Background


Petitioner entered the United States as an infant in 1989. In 2019, the Department of Homeland Security charged Petitioner as removable. Petitioner filed an application for withholding of removal and for protection under CAT.[1]

---

[1] Petitioner also applied for asylum but later conceded that he was ineligible.

21-10279                Opinion of the Court                3

In pertinent part, Petitioner said he feared he would be targeted for torture upon his return to Mexico based on (1) his schizophrenia and history of mental illness and (2) his former gang affiliation and visible gang-related tattoos.[2]  About mental illness, Petitioner asserted that patients in mental-health facilities in Mexico are subjected to poor conditions and to abuse rising to the level of torture.  Petitioner said the Mexican government allows the poor conditions and abuse to persist and, thus, is complicit in the torture of people with mental illnesses.  Petitioner also asserted that his gang tattoos made him readily identifiable as a person affiliated with a United States gang: characteristics that would make him vulnerable to being kidnapped and tortured by Mexican gang members and by the Mexican police.

The IJ denied Petitioner's application for relief.  The IJ determined that Petitioner's prior California conviction for first-degree residential robbery constituted a "particularly serious crime" within the meaning of 8 U.S.C. § 1231(b)(3)(B)(ii).  The IJ thus concluded that Petitioner was ineligible for withholding of removal under the INA and under CAT.

---

[2] Petitioner -- a former member of a gang known as the Fresno Bulldogs -- has these tattoos: (1) a big dog paw on his chest; (2) a "C" on his right shoulder and on the middle of his chest; (3) two small dog paws on his left leg; (4) two small dog paws on his neck; (5) an "E" on his right shin; (6) an "S" on his left shin; (7) a "BD" on his right calf; (8) a little "BDS" on his right hand; and (9) an "ES" on his left hand.

The IJ next determined whether Petitioner was eligible for deferral of removal under CAT.  In addressing Petitioner's claim that he would be targeted because of his mental-health issues, the IJ noted that Petitioner's case was similar to the circumstances presented in the BIA's decision in *Matter of J-R-G-P-*, 27 I. & N. Dec. 482 (BIA 2018).  In that case, the applicant asserted that his mental-health issues made it more-likely-than-not that he would be imprisoned or committed to a mental-health facility if returned to Mexico: facilities in which he would be tortured by law enforcement officials or mental-health workers.  27 I. & N. Dec. at 483.  There, in denying CAT relief, the BIA determined that the substandard conditions in Mexico's mental-health facilities, pretrial detention centers, and prisons were the result of neglect, a lack of resources, and of insufficient training and education -- not a specific intent "to inflict severe physical or mental pain or suffering."  *Id.* at 486-87.

Here, the IJ acknowledged Petitioner's schizophrenia diagnosis and history of mental-health issues.  The IJ also observed, however, that Petitioner -- who was unmedicated during his 2020 individual merits hearing -- had exhibited no "evident mental health issues" while in court.  The IJ noted that Petitioner had last been hospitalized involuntarily in 2016 and that Petitioner was no longer addicted to methamphetamine.  In the light of this evidence, the IJ found an insufficient likelihood that Petitioner's mental health would attract the notice of the Mexican authorities or that Petitioner would be arrested, imprisoned, or committed involuntarily to a mental-health facility in Mexico.

The IJ then discussed the country condition reports describing the poor conditions and prevalence of abuse within Mexico's mental-health facilities.  The IJ determined, however (as the BIA did in *Matter of J-R-G-P-*), that the poor conditions at these facilities were "the result of neglect, a lack of resources, or insufficient training and education, not due to a specific intent to inflict severe pain or suffering."  The IJ thus found insufficient evidence establishing that the Mexican government had the specific intent to torture its mentally ill citizens.

The IJ next considered Petitioner's asserted fear about being tortured based on his prior gang membership and his visible gang tattoos.  The IJ expressed concern about the gang violence in Mexico.  Nevertheless, the IJ determined that "broad characterizations" about the country conditions in Mexico were insufficient to demonstrate that Petitioner personally would be tortured.  The IJ found it "speculative" that Mexican authorities or gangs would identify Petitioner's gang tattoos: tattoos specific to a local gang in Fresno, California with no ties to Mexico.  The IJ also found it "speculative" that the Mexican authorities or gangs would seek to harm Petitioner based upon his past involvement in a U.S.-based gang with no Mexican affiliation or rivalry.  Finally, the IJ found "wholly unsupported by the evidence" Petitioner's assertion about the Mexican government's involvement in, or acquiescence to, such gang violence.  The IJ concluded that Petitioner had failed to show that it was more-likely-than-not that he would be tortured

upon his return to Mexico and, thus, denied Petitioner deferral of removal under CAT.

The BIA adopted and affirmed the IJ's decision.


## II.    Discussion


We review only the decision of the BIA, except to the extent that the BIA adopts expressly the IJ's decision. *See Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). Because the BIA adopted expressly the IJ's decision in this case, we review both decisions. *See id.*

We review *de novo* legal questions. *See Lukaj v. U.S. Att'y Gen.*, 953 F.3d 1305, 1311 (11th Cir. 2020). We review administrative fact findings under the "highly deferential substantial evidence test" whereby we "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *See Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*). We "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* at 1027. To reverse a fact finding, we must conclude "that the record not only supports reversal, but compels it." *See Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).

A. Withholding of Removal

On appeal, Petitioner challenges the BIA's and the IJ's determination that his California conviction for first-degree residential robbery -- in violation of California Penal Code § 211 -- qualified as a "particularly serious crime" under the INA.

A non-citizen is ineligible for withholding of removal if the Attorney General decides that the non-citizen has been convicted of a "particularly serious crime." *See* 8 U.S.C. § 1231(b)(3)(B)(ii). By statute, an aggravated felony for which a non-citizen has been sentenced to at least five years "shall" be considered a "particularly serious crime." *Id.* § 1231(b)(3)(B). Here, Petitioner's California residential-robbery conviction resulted in a sentence of three years' imprisonment and, thus, is no *per se* "particularly serious crime." Notwithstanding the length of the sentence imposed, however, "the Attorney General retains discretion to determine on a case-by-case basis whether the offense constitutes a particularly serious crime." *Id.* § 1231(b)(3)(B); *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010).

In determining whether an offense qualifies as a "particularly serious crime," the IJ may rely on the statutory elements of the offense as well as on additional evidence about the nature of the conviction, the circumstances and facts underlying the conviction, and on the type of sentence imposed. *See In re N-A-M-*, 24 I. & N. Dec. 336, 342 (BIA 2007). If "the elements of the offense are

examined and found to potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a particularly serious crime determination, including the conviction records and sentencing information." *Id.* On other hand, if the elements of the offense would not bring the crime potentially into the particularly-serious-crime category, "the individual facts and circumstances of the offense are of no consequence." *Id.*

The BIA and the IJ committed no error in determining that Petitioner's state residential-robbery conviction constituted a "particularly serious crime." Under California law, residential robbery means "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal Code § 211. Based on these statutory elements, the BIA and the IJ concluded reasonably that Petitioner's residential-robbery offense constituted a crime against a person: the kind of crime the BIA has said is "more likely to be categorized as particularly serious." *See In re N-A-M-*, 24 I. & N. Dec. at 343. Having concluded that the elements of Petitioner's offense brought the offense "within the ambit of a particularly serious crime," the BIA and the IJ were entitled to consider the circumstances and facts underlying Petitioner's offense -- including Petitioner's use of a knife during the commission of the offense -- in making a determination about seriousness. *See id.* at 342; *Lapaix*, 605 F.3d at 1143.

Given the record in this case, the BIA and the IJ committed no error in determining that Petitioner's California residential-robbery offense constituted a "particularly serious crime" that rendered Petitioner ineligible for withholding of removal under both the INA and under CAT.

B. Deferral of Removal Under CAT

A non-citizen convicted of a particularly serious crime (and thus ineligible for withholding of removal under CAT) may still be eligible for deferral of removal under CAT. *See* 8 C.F.R. § 1208.17(a). To establish eligibility for CAT relief, an applicant must show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *See* 8 C.R.F. § 1208.16(c)(2); *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004). The applicant must also show that the torture would be "inflicted by or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). "Acquiescence requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Reyes-Sanchez*, 369 F.3d at 1242 (quotations omitted). "[T]o constitute torture, an act must be specifically

intended to inflict severe physical or mental pain or suffering." 8 C.F.R. § 1208.18(a)(5).

Substantial evidence supports the BIA's and the IJ's determination that Petitioner failed to show that he more-likely-than-not would be tortured by, or with the acquiescence of, the Mexican government.


### 1. Mental Health


About Petitioner's mental health, the record supports the BIA's and the IJ's determination that Petitioner had shown an insufficient likelihood that he would be arrested, imprisoned, or involuntarily committed or otherwise come to the attention of Mexican authorities based on his mental-health issues. Contrary to Petitioner's argument on appeal, the IJ considered expressly Petitioner's schizophrenia diagnosis, Petitioner's history of mental-health issues, and Petitioner's mental- health records. About Petitioner's current mental-health status, the IJ noted that, even without medication, Petitioner exhibited no obvious mental-health issues while in court. In addition, Petitioner's last involuntary hospitalization was four years earlier, and Petitioner was no longer addicted to methamphetamine: a factor Petitioner speculated might have contributed to his mental-health issues.

On appeal, Petitioner asserts that the BIA and the IJ failed to consider adequately Petitioner's complete mental-health history,

including Petitioner's attempted suicide in 2017, substance-abuse issues in 2018, and Petitioner's "mental breakdown" in 2019. We have stressed that, although the IJ and the BIA must consider all evidence submitted by a petitioner, the IJ and the BIA -- in rendering a decision -- "need not address specifically each claim the petitioner made or each piece of evidence the petitioner presented." See Indrawati v. U.S. Att'y Gen., 779 F.3d 1284, 1302 (11th Cir. 2015). Nor do these examples of Petitioner's past mental-health issues compel the conclusion that Petitioner's current mental-health status would more-likely-than-not cause him to be arrested or committed involuntarily in Mexico.

The record also supports the BIA's and the IJ's determination that insufficient evidence exists establishing that the substandard conditions in Mexico's mental-health facilities are the product of a specific intent by the government to torture persons with mental illness. The BIA has said that substandard conditions caused by mere negligence or a lack of resources do not constitute "torture" for purposes of CAT. See Matter of J-R-G-P-, 27 I. & N. Dec. at 484; Matter of J-E-, 23 I. & N. Dec. 291, 299, 301 (BIA 2002). Thus, CAT relief may be denied properly when the evidence "plausibly establishes that abusive or squalid conditions in pretrial detention facilities, prisons, or mental health institutions in the country of removal are the result of neglect, a lack of resources, or insufficient training and education, rather than a specific intent to cause severe pain and suffering." See Matter of J-R-G-P-, 27 I. & N. Dec. at 485-86.

Here, the record includes documents attributing the substandard conditions in Mexico's mental-health facilities to factors such as negligence, the absence of community-based support, a lack of other rehabilitation options, and an outdated understanding of best practices. The record also evidences that the Mexican government has proposed legislation purported to increase access to mental-health care and to improve mental-health services. Mexican law also prohibits discrimination against persons with mental disabilities. This evidence of the Mexican government's attempts to improve its mental-health care system -- even if not yet effective -- supports the BIA's and the IJ's finding that the Mexican government has not created or maintained substandard conditions in its mental-health facilities for the specific purpose of torturing patients with mental illnesses.[3]

---

[3] On appeal, Petitioner contends that to demonstrate a specific intent on the part of the Mexican government to torture the mentally ill is unnecessary. Petitioner contends that the BIA and the IJ erred in failing to consider, instead, the intent of the private mental-health care workers: private actors who Petitioner says torture patients with the acquiescence of the Mexican government. Petitioner never presented adequately this argument before the IJ or the BIA. We will not address an argument raised for the first time on appeal. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) ("We lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect thereto.").

## 2. Gang Membership & Gang Tattoos

Substantial evidence also supports the BIA's and the IJ's finding that Petitioner failed to demonstrate a sufficient likelihood that he would be tortured by, or with the acquiescence of, the Mexican government -- torture based on his prior gang membership and his visible gang tattoos.

On appeal, Petitioner contends that the BIA and the IJ failed to consider adequately the testimony of Petitioner's expert witness (Dr. Slack) about the likelihood that Petitioner's personal circumstances would make him a target for torture by Mexican gang members. Among other things, Dr. Slack testified about the "paranoia" and "vigilance" Mexican gangs often exercise in monitoring "new arrivals" and in identifying potential rival gang members. Dr. Slack also opined that Petitioner's visible tattoos and non-native Spanish would be factors that would attract attention and would put Petitioner at risk of harm.

The IJ acknowledged Petitioner's evidence -- including Dr. Slack's testimony -- that Petitioner was "at some risk of harm from gangs and criminals." But the IJ found Dr. Slack's "general assertions" based on "broad characterizations of the current country conditions" insufficient to demonstrate that Petitioner personally would more-likely-than-not be tortured. After considering Dr. Slack's testimony, the IJ found it "speculative" that the Mexican gangs would recognize Petitioner's tattoos as gang-related and found it "speculative" that Petitioner would be harmed based on

his prior membership in a non-rival gang with no Mexican affiliation.

That Petitioner disagrees with the weight given to Dr. Slack's testimony -- by itself -- demonstrates no error. *See Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1292 (11th Cir. 2020) (explaining that "[a]lthough IJs are obligated to consider an applicant's documentary evidence, they are under no obligation to credit it or assign it decisive weight." (quotations and alteration omitted)). Moreover, Petitioner has identified no evidence that would compel the conclusion that the feared gang violence would be committed with the consent or acquiescence of the Mexican government.

In these kinds of cases, the standards for review are particularly important. The IJ's and the BIA's decision that Petitioner was unentitled to withholding or removal or to CAT relief is supported by reasonable, substantial, and probative evidence. Nothing on this record compels us to reverse that decision.

PETITION DENIED.