**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2489
_____

JEAN JOSEPH
a/k/a/ JACQUES ARISTIDE
a/k/a "HATIAN JEAN,"

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A72-039-885)
Immigration Judge: Honorable Walter Durling

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 14, 2010

Before:  AMBRO, CHAGARES, and ALDISERT, <u>Circuit</u> <u>Judges</u>
(Opinion filed: August 30, 2010)

_____

OPINION
_____

PER CURIAM

Jean Joseph, a citizen of Haiti who fled Haiti by boat in 1992, was interdicted at

sea shortly thereafter, and transferred to the United States where he applied immediately

for asylum based on his participation as an early follower and active political supporter of former President Aristide. In 1999, Joseph was convicted in federal district court in Florida of conspiracy to possess with intent to distribute cocaine base and possession with intent to distribute cocaine base under 21 U.S.C. §§ 846 and 841(a)(1).[1] He completed his sentence in December 2007, and in May 2007, the Government served Joseph with a Notice to Appear, charging him as removable based on his felony drug convictions and on his entry into the country without a valid entry document.

Joseph conceded his ineligibility for asylum and withholding of removal, but applied for protection under the United Nations Convention Against Torture ("CAT"). In addition to his own testimony, Joseph presented three other witnesses: Robert Stein, Ph.D, a clinical psychologist; Michelle Karshan, founder and Executive Director of Alternative Chance, a nonprofit organization dedicated to assisting criminal deportees to Haiti; and Brian Concannon, Esq., Director of the Institute for Justice & Democracy in Haiti. Together, their testimony indicated that Joseph was beaten severely for his activity in the Lavalas Party and Aristide's political movement in 1991; if he was returned to Haiti, he would be placed in a detention center or prison as a criminal deportee; he would risk extortion in a generally corrupt prison system; he would risk physical abuse by prison guards because of his mental illness and physical abuse on account of his political beliefs by prison guards who are former Anti-Aristide military officers and insurgents; and that,

---

[1] Joseph's 1992 asylum application was not adjudicated after he was convicted.

in the event he is released into the general Haitian population, he will face a "significant possibility" that he will be tortured by members of the National Police Force who are former anti-Aristide military members and insurgents. In addition to other documentary evidence, Joseph submitted affidavits from his wife, his brother-in-law, and three friends who currently live in Haiti.

The IJ denied CAT relief and ordered Joseph removed to Haiti. By decision dated April 30, 2009, the Board of Immigration Appeals ("BIA") affirmed the IJ's decision. Although the IJ discredited Joseph's testimony, the BIA did not base its determination on the IJ's adverse credibility determination. The BIA agreed with the IJ, however, that Joseph failed to present sufficient evidence demonstrating that it is more likely than not that he would be tortured by government officials or persons acting on their behalf and that he did not demonstrate that he would be personally at risk. Among other things, the BIA determined that Joseph's mental illness claim was distinguishable from other cases that involved aliens who were prone to violence and who suffered from more severe mental illnesses that made them ready targets for prison abuse. The Board also held that, although Joseph was tortured in 1991 because he was an Aristide supporter and member of the Lavalas Party, there was no "clear probability that after 17 years the respondent will be tortured for his previous support of Lavalas or Aristide."

Joseph presents a petition for review, which the Government challenges primarily on jurisdictional grounds. Because the basis for Joseph's removal is his conviction for an

3

aggravated felony, our jurisdiction is limited by the REAL ID Act to constitutional claims and questions of law.  See Pierre v. Attorney Gen., 528 F.3d 180, 184 (3d Cir. 2008) (en banc) (citing 8 U.S.C. § 1252(a)(2)(C)-(D)); see also Silva-Rengifo v. Attorney Gen., 473 F.3d 58, 63 (3d Cir. 2007) (relying on Kamara v. Attorney Gen., 420 F.3d 202, 210-11 (3d Cir. 2005), for the proposition that the "jurisdictional grant regarding appeals by aggravated felons extends not just to legal determinations but also to application of law to facts").  We cannot revisit the factual findings in the record.  Alaka v. Attorney Gen., 456 F.3d 88, 102 (3d Cir. 2006).  With respect to CAT claims, the question of the likelihood of torture is a mixed one, comprised of a factual component ("what is likely to happen to the petitioner if removed") and a legal one ("does what is likely to happen amount to the legal definition of torture").  Kaplun v. Attorney Gen., 602 F.3d 260, 271 (3d Cir. 2010). Joseph presents two legal questions: whether the BIA sufficiently reviewed all relevant evidence of torture under 8 C.F.R. § 1208.16(c)(3);[2] and whether the BIA erred in determining that the evidence Joseph presented did not amount to torture as that term is defined under the law.  Accordingly, this Court has jurisdiction to review his petition. See, e.g., Pierre, 528 F.3d at 184.  We review the BIA's legal decisions de novo.  Kamara, 420 F.3d at 211.

Deferral of removal under the CAT is mandatory if an alien can show that it is

---

[2] Joseph asserts that, despite the Government's mischaracterization, his "all relevant evidence" claim is not a due process claim.  (See Reply, at 4.)  Hence, we will not address it under the Due Process Clause.

4

more likely than not that he or she will be tortured.  See Pierre, 528 F.3d at 186 (citing 8

C.F.R. § 208.17(a)).  An act is torture if it is inflicted by or at the instigation of, or with

the consent or acquiescence of, a public official or other person acting in an official

capacity, for obtaining information or a confession, for punishment, for intimidation or

coercion, or for any reason based on discrimination of any kind.  See id. at 189.  The

imprisonment of criminal deportees in Haiti in objectively deplorable and harsh

conditions generally does not constitute torture.  Id.  However, if authorities place an

individual in such conditions in order to cause severe pain and suffering, such an act may

rise to the level of torture, provided the other CAT requirements are met.  Id. at 190.  If

the CAT claim relies on a series of suppositions, the petitioner must demonstrate that

each hypothetical event in the chain is more likely than not to occur.  See In re J-F-F-, 23

I. & N. Dec. 912, 917-18 & n.4 (BIA 2006); see also Savchuck v. Mukasey, 518 F.3d

119, 123-24 (2d Cir. 2008).

Joseph claims that the BIA failed to consider unrebutted evidence of past torture

and existing country conditions that are "relevant to the possibility of future torture,"

under 8 C.F.R. § 1208.16(c)(3).[3]  He notes, in particular, that there is no indication in the

---

[3] In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, "all evidence relevant to the possibility of future torture shall be considered . . . ."  8 C.F.R. § 1208.16(c)(3).  "All relevant evidence" includes "evidence of past torture as well as conditions in the country that would increase the likelihood of history repeating itself."  Zubeda v. Ashcroft, 333 F.3d 463, 478 (3d Cir. 2003).

BIA's opinion that the Board considered Concannon's expert testimony, as well as evidence from various sources (including the State Department Country Report for Haiti, issued in March 2008) that chronicled human rights abuses in Haiti from 2004 through 2008, perpetrated in part by the Haitian National Police and armed anti-Lavalas groups. Joseph relies primarily on Zubeda v. Ashcroft, 333 F.3d 463, 477, 479 (3d Cir. 2003) (holding that the BIA erred under 8 C.F.R. § 208.16(c)(3), when it "provid[ed] only a minimal analysis of Zubeda's claim" and "cavalierly dismissed the substantial documentation of conditions in the DRC [Democratic Republic of Congo]"). (Pet. Br. at 22 (Awolesi v. Ashcroft, 341 F.3d 227, 232 (3d Cir. 2003), and Sotto v. INS, 748 F.2d 832, 836 (3d Cir. 1984).)

The BIA must provide sufficient detail to allow the reviewing court to discern the basis of its decision, but it is not obligated to address each piece of documentary evidence in its opinion. Toussaint v. Attorney Gen., 455 F.3d 409, 414 (3d Cir. 2006); Zheng v. Attorney Gen., 549 F.3d 260, 268 (3d Cir. 2008). Here, the Board provided enough detail for us to conduct a meaningful review of its denial of Joseph's sole claim under the CAT. The BIA's determination that Joseph failed "to present sufficient evidence" that he would be personally at risk of torture upon his return to Haiti indicates that the Board had considered all of the evidence of record. Toussaint, 455 F.3d at 415 ("BIA's reference to 'insufficient evidence' indicates that it weighed the evidence and found it lacking . . . .").

Next, Joseph argues that the Board erred in ruling that the evidence presented

6

regarding the likelihood of his torture in a Haitian detention center or prison did not amount to the legal definition of torture. As the BIA noted, the basic conditions of detention in Haiti, although admittedly deplorable, do not amount to torture under the law. Pierre, 528 F.3d at 191. Joseph claims, however, that he will face personal risk of torture in detention because he suffers from major depression and will be subject to physical abuse and inhumane living conditions for that reason. He relies on the expert Michelle Karshan's testimony that mentally ill detainees may be singled out for physical abuse because of their bizarre behavior and inability to comply with prison rules, and Dr. Robert Stein's report stating that, without the necessary treatment for his depression and other medical conditions, and absent humane living conditions in the Haitian prison or detention center, Joseph is likely to "simply curl up in a corner and not say anything at all." (Pet. Br. at 29.)[4] We conclude that this evidence, although deeply troubling, falls short of demonstrating torture as that term is defined under the law, because it fails to show the requisite specific intent on the part of the Haitian authorities. Pierre, 528 F.3d at 191; cf. Villegas v. Mukasey, 523 F.3d 984, 989 (9th Cir. 2008) (holding that the conditions of the Mexican mental health system, which were created by "officials'

---

[4] Joseph asserts that his case is similar to Lavira v. Attorney General, 478 F.3d 158 (3d Cir. 2007), In re Zephirin, No. A45-481-814, at *8 (BIA Jan. 22, 2008), and Jean-Pierre v. Attorney General, 500 F.3d 1315 (11th Cir. 2007). We disagree. Here, Michelle Karshan testified only that mentally ill deportees who call attention to themselves by their bizarre behavior or their noncompliance would be singled out for physical abuse by prison guards, and that otherwise, physical abuse, if any, would be random. (App. at 57a & 93a.)

7

historical gross negligence and misunderstanding of the nature of psychiatric illness," do not amount to torture for CAT purposes).

Joseph also claims that he will be tortured by prison officials in order to extort money from him and his family. As the BIA concluded, however, the prison guards' extortion practices, and their disregard for the Haitian Supreme Court's 2006 ruling rendering automatic detention of deportees unconstitutional, was not intended to torture the deportees, but rather to engage in widespread extortion for pecuniary gain and to preserve an unlawful source of revenue.[5]

Accordingly, we will deny the petition for review.[6]

---

[5] Even if we had jurisdiction to conduct a substantial evidence review as Joseph suggests, we could not conclude that a reasonable fact-finder would be compelled to find that the BIA's denial of CAT relief was wrong. Wang v. Ashcroft, 368 F.3d 347, 349 (3d Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)).

[6] As a native of Haiti, Joseph may be able to remain in the United States despite the final order of removal if he applies for the temporary protected status made available after the earthquake earlier this year. See 75 Fed. Reg. 3476-79 (Jan. 21, 2010) (available online at http://edocket.access.gpo.gov/2010/2010-1169.htm).