**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

NOV 9 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

EDUARDO LA SCALA,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

No. 19-70285

Agency No. A028-461-512

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 16, 2020[**]
Pasadena, California

Before: SCHROEDER and COLLINS, Circuit Judges, and BAYLSON,[***] District
Judge.

Eduardo La Scala, a native and citizen of Brazil, petitions for review of the

order of the Board of Immigration Appeals ("BIA") adopting and affirming the

order of the Immigration Judge ("IJ") denying La Scala's claim for deferral of

removal under the Convention Against Torture ("Torture Convention") and

---

[*] This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes that this case is suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2)(C).

[***] The Honorable Michael M. Baylson, United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

ordering him removed to Brazil. We have jurisdiction pursuant to § 242 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252. Because the BIA adopted the IJ's order, we review both decisions. *Sanchez v. Sessions*, 904 F.3d 643, 649 (9th Cir. 2018). We review the agency's factual determinations for substantial evidence, which means that we uphold those determinations "'unless the evidence in the record compels a contrary conclusion,'" and we review questions of law de novo. *Cole v. Holder*, 659 F.3d 762, 769–70 (9th Cir. 2011) (citation omitted). We deny the petition.[1]

1. A petitioner claiming protection under the Torture Convention bears the burden to show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); *id.* § 1208.17(a) (remedy of deferral is applied after standards under § 1208.16 have first been applied). "Torture" means "any act by which severe pain or suffering . . . is intentionally inflicted on a person" for specified purposes "when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* § 1208.18(a)(1). La Scala claims that, because he suffers from schizoaffective disorder and other mental illnesses, upon removal to Brazil he is likely to have a

---

[1] We thank the students of the University of California, Irvine School of Law for their participation in our pro bono program and for the quality of their briefing in this matter.

2

police encounter that will lead to a likelihood of torture from three separate groups—police, prison guards, and fellow prisoners. While we agree that—given La Scala's mental illness and extensive criminal record—the administrative record here supports, if not compels, the conclusion that La Scala is likely to have police contacts after removal to Brazil, we conclude that substantial evidence supports the agency's conclusion that La Scala failed to show that, as a result of such encounters, it is likely that he would be tortured.

2. We have held that "generalized evidence of violence and crime" in a country that "is not particular to [the] Petitioner[] . . . is insufficient to meet th[e] standard" for showing that "it is more likely than not that [he] would be tortured if returned" to his home country. *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010); *see also Dhital v. Mukasey*, 532 F.3d 1044, 1051 (9th Cir. 2008) ("the petitioner must demonstrate that he would be subject to a '*particularized threat* of torture'") (citation omitted). Relatedly, we have held that generalized evidence of poor institutional conditions, such as in a mental institution, do not establish a likelihood of torture absent either evidence that government "officials (or private actors to whom officials have acquiesced) created these conditions for the specific purpose of inflicting suffering upon" persons detained within them, *Villegas v. Mukasey*, 523 F.3d 984, 989 (9th Cir. 2008), or evidence that such abusers "would single [the petitioner] out for mistreatment" that amounts to torture, *Eneh v.*

3

*Holder*, 601 F.3d 943, 948 (9th Cir. 2010). The agency's conclusion that La Scala failed to establish a likelihood of torture under these standards is based on a permissible reading of the record and is supported by substantial evidence.

The record contains generalized evidence about police violence during civilian encounters with the police, but the agency properly concluded that La Scala had failed to show a likelihood that he would suffer such violence. Thus, although La Scala's expert witness, Rafael Souza, credibly "expressed his belief there is a higher risk of people with mental illnesses interacting with police and ending up in a situation of torture, abuse, or death," the IJ found this testimony unpersuasive because Souza "acknowledged there was no data on the matter," he "cites no studies or reports," and the testimony thus "constitutes speculation." In upholding this finding, the BIA likewise noted that Souza had conceded the "lack of data regarding police killings of people with mental health issues." Souza also stated that he thought La Scala's mental illness might make him more aggressive during a police encounter, thereby increasing the risk of mistreatment, but the IJ discounted this testimony on the ground that Souza had "no experience or educational background in psychology and no statistical data to support him." Whether or not we would have read the record the same way, we cannot say that the record compels a conclusion contrary to that of the agency. *See* 8 U.S.C. § 1252(b)(4)(B).

The IJ likewise permissibly concluded that La Scala had failed to show a likelihood that he would be tortured by prison guards or by prison inmates. Again, there is evidence in the record that prison conditions in Brazil are seriously deficient in many respects, but the agency properly held that there was insufficient evidence to establish that La Scala himself was likely to be tortured, as that term is defined. Reviewing the evidence concerning both the deficiencies in Brazilian prisons (including violence from prison guards and other inmates) as well as the measures to address them, the IJ concluded that La Scala had not established that such conditions reflected a "specific intent to torture mentally ill individuals."[2] The IJ also explained that she discounted Souza's testimony on this score because he at times employed too expansive a definition of torture and because his stated beliefs concerning the likely intention of officers was, in the IJ's view, speculative. The BIA upheld these findings, agreeing that the IJ properly found that La Scala did not show that, in light of prison conditions in Brazil, he faced "a particularized risk of torture with the acquiescence of a public official or other person acting in an official capacity." The record does not compel a contrary finding.

La Scala contends that the agency failed to consider the record as a whole

---

[2] La Scala contends that this finding only applies to conditions at mental institutions and not at prisons, but we disagree. La Scala's theory before the IJ was that he was likely to be mistreated in either setting because of his mental problems, and the IJ rejected that contention after explicitly reviewing record evidence concerning both types of facilities and both "health workers" and "prison guards."

and also failed to consider the cumulative impact of all of the potential sources of torture (*i.e.*, police officers, prison guards, and other inmates).  We disagree.  The IJ's lengthy order, which the BIA adopted, explicitly states that "[t]he Court has considered all of the evidence provided," and we do not find this to be a case in which the agency "misstat[ed] the record" or "fail[ed] to mention highly probative or potentially dispositive evidence."  *Cole*, 659 F.3d at 771.  And the IJ's order, which the BIA adopted, properly reviewed all sources of potential torture in reaching its overall conclusion that "the record does not show [that] the government of Brazil, a public official, or anyone acting in an official capacity would instigate or acquiesce to Respondent's torture in Brazil."

3.  La Scala argues that the BIA should have granted his motion to remand for further proceedings after the election of Jair Bolsonaro as president of Brazil, on the ground that Bolsonaro's policies would assertedly increase the risk of torture that La Scala would face.  We find no abuse of discretion in the BIA's conclusion that the proffered evidence would not likely change the outcome in this case and that a remand was therefore unwarranted.  *See Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005).

The petition for review is DENIED.