**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

MAR 28 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JUAN JOSE IGLESIAS-IGLESIAS, AKA Geraldo Reyes, <br><br> Petitioner, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br> Respondent. | No.  20-70650 <br><br> Agency No. A209-405-297 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 3, 2021
San Francisco, California

Before:  WARDLAW and GOULD, Circuit Judges, and PREGERSON,[**] District
Judge.

Petitioner Juan Jose Iglesias-Iglesias, a native and citizen of Mexico, seeks

review of a Board of Immigration Appeals ("BIA") decision affirming an

Immigration Judge ("IJ")'s denial of his application for asylum, withholding of

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Dean D. Pregerson, United States District Judge for
the Central District of California, sitting by designation.

removal, and relief under the Convention Against Torture ("CAT"). The petition is DENIED with respect to asylum and withholding of removal, and GRANTED with respect to CAT relief.

We have jurisdiction under 8 U.S.C. § 1252(a). We review questions of law de novo and the agency's factual determinations for substantial evidence. *Cordoba v. Holder*, 726 F.3d 1106, 1113 (9th Cir. 2013); *Tamang v. Holder*, 598 F.3d 1083, 1088 (9th Cir. 2010).

1.     For purposes of asylum, the proposed social group of "Mexicans suffering from a severe psychotic illness" is too broad to constitute a "particular social group." *See Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 239 (BIA 2014). The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM-V") states that psychotic disorders are "heterogenous," and defines such disorders by abnormalities across five separate domains. "*Locura*," the defining characteristic of the proposed social group "*locos*," refers to a "a severe form of chronic psychosis." "*Locos*," therefore, also constitute too diffuse a group to qualify as sufficiently particularized for asylum purposes. *See Matter of M-E-V-G-*, 26 I. & N. Dec. at 239.

The group "*locos violentos*," encompassing violent people with severe psychosis, is not vague or subjective. As described above, the DSM-V identifies objective, if wide-ranging, features of psychotic disorders. *See Acevedo Granados*

2

*v. Garland*, 992 F.3d 755, 762 (9th Cir. 2021) (distinguishing "intellectual disability" as defined in the DSM-V from lay uses of the term). While the terms "*loco*" and "*violente*" might be overbroad individually, when used in conjunction, they limit each other and describe a particularized social group. *See Temu v. Holder*, 740 F.3d 887, 895 (4th Cir. 2014) (concluding that "individuals with bipolar disorder who exhibit outwardly erratic behavior" adequately defines a particularized social group, where each of the descriptive terms alone would not).

This reasoning applies with additional force to the proposed social group comprised of "Mexicans with incurable delusional disorder who exhibit manic symptoms and bizarre, grandiose delusions." The DSM-V identifies "delusional disorders" as a particular subset of psychotic disorders, and specifically defines the terms "bizarre" and "grandiose" in the context of delusions. *See Acevedo Granados*, 992 F.3d at 762. The proposed group is hardly diffuse, insofar as it includes only those individuals who (1) suffer from delusional disorder, (2) are incurable, (3) exhibit manic symptoms, <u>and</u> (4) exhibit delusions that are both (5) bizarre and (6) grandiose, as used in the psychological, rather than lay, sense.

Although some of the social groups Petitioner proposes are sufficiently particularized, none is sufficiently distinct within Mexican society to qualify as a "particular social group." *See Reyes v. Lynch*, 842 F.3d 1125, 1131-33 (9th Cir. 2016). Although Petitioner argues that "*locos violentos*" are perceived as distinct

3

from "*locos*" or from those suffering from "*nervios*," Petitioner has not established that any of those groups are viewed as distinct by Mexican society. Nor is there any indication that the highly particularized group of "Mexicans with incurable delusional disorder who exhibit manic symptoms and bizarre, grandiose delusions" is viewed or treated as distinct. Lastly, with respect to "*abandonados*," although Petitioner contends that the term, as used in Mexican society, applies to severely mentally disabled, institutionalized individuals who lack family support, the record indicates that the term includes many other people as well, such as homeless people who have no family. Furthermore, there is no evidence of a legal regime specific to *abandonados* on par with the legislation explicitly tailored to certain cooperating witnesses in *Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1092 (9th Cir. 2013) (en banc).

Because Petitioner cannot establish that he is a member of a cognizable particular social group, his Petition for Review of the BIA's denial of asylum is DENIED.

2.    The standard for withholding of removal is more stringent than that for asylum, requiring a "clear probability" of persecution on the basis of a protected ground rather than a well-founded fear of persecution. *See Canales-Vargas v. Gonzales*, 441 F.3d 739, 746 (9th Cir. 2006). Because Petitioner fails to meet the lower threshold for asylum, he also fails to establish eligibility for withholding of

4

removal.

3.      As to CAT relief, Petitioner must show that it is more likely than not that he will be tortured "by or at the instigation of or with at the consent or acquiescence of a public official or other person acting in an official capacity." *Zheng v. Ashcroft*, 332 F.3d 1186, 1188 (9th Cir. 2003) (citing 8 C.F.R. § 208.18(a)(1)). The agency's conclusion that Petitioner does not satisfy the standard for CAT relief is not supported by substantial evidence. The record reveals the existence of only two reform-minded "Hidalgo Model" institutions in all of Mexico, neither of which is located in Petitioner's home state. The record is also replete with evidence, including official acknowledgement, of widespread abuses in Mexican psychiatric institutions, including beatings, sexual abuse, physical restraints, lack of medical care, lack of food, water, and clothing, and medically unnecessary, forced psychotropic medication. Indeed, Mexican officials acknowledged that patients suffer inhumane treatment at the psychiatric hospital in Oaxaca, Petitioner's home state. Given Petitioner's mental illness and lack of support, it is likely he would be institutionalized and subjected to such treatment.

Whether the abuse Petitioner is likely to encounter is severe enough to meet the definition of "torture" is a question of law. *Ridore v. Holder*, 696 F.3d 907, 915 (9th Cir. 2012). There appears to be no dispute that the severity of the abuses common in Mexican psychiatric institutions rises to the level of torture. The

5

record indicates, for example, that Mexican psychiatric hospitals regularly administer medically unnecessary psychotropic drugs, and the IJ acknowledged other "numerous and various . . . serious human rights abuses . . . , including sexual abuse, the excessive use of restraints, intrusive medical procedures – including the use of electroconvulsive therapy (ECT) and lobotomies —, . . . and the use of isolation rooms . . . ."[1]

"Torture" also requires the specific intent to harm. *Villegas v. Mukasey*, 523 F.3d 984, 988-89 (9th Cir. 2008). Specific intent is a question of fact. *Guerra v. Barr*, 974 F.3d 909, 913 (9th Cir. 2020). Although the BIA ostensibly affirmed the IJ's "finding that respondent did not establish that . . . any harm would be intentionally inflicted by Mexican officials," the IJ never made any such explicit finding.[2] *See* fn. 2, *supra*. Rather, the IJ discussed efforts at reform when evaluating the likelihood that Petitioner would be abused at all. The BIA's conclusion as to officials' intent therefore constituted improper de novo factfinding. *See Rodriguez v. Holder*, 683 F.3d 1164, 1170 (9th Cir. 2012).

---

[1] The IJ denied CAT relief not because these abuses do not meet the definition of torture, but rather because the IJ concluded that Petitioner was not sufficiently likely to be subjected to such practices. As discussed above, that conclusion is not supported by substantial evidence.

[2] Although the IJ did refer to the Mexican government's "efforts to improve the treatment of psychiatric patients," his discussion does not address the mental state of those who inflict "abusive treatment," and only uses the word "intent" in a parenthetical quotation of *Villegas*.

Moreover, the BIA's factual finding is not supported by substantial evidence.[3] We will uphold factual determinations "supported by reasonable, substantial and probative evidence on the record considered as a whole." *Mendoza-Alvarez v. Holder*, 714 F.3d 1161, 1163 (9th Cir. 2013). The record is clear that Mexican psychiatric institutions often forcibly administer psychotropic medications not for any legitimate treatment purpose, but rather to coerce, control, and subdue patients. *See* 8 C.F.R. § 1208.18(a)(1); (a)(4)(ii). Similarly, the record indicates that hospital staff physically restrain patients as a means to control behavior or "for fun," employ shock therapy "as punishment," and place patients in isolation rooms without any medical purpose. Nor is there any evidence or contention that sexual abuse of psychiatric patients somehow stems from a mere "misunderstanding of the nature of psychiatric illness." *Villegas*, 523 F.3d at 989.

The record before us compels the conclusion that officials in Mexican psychiatric hospitals commit "serious human rights abuses" not out of ignorance or negligence, but rather with the specific intent to harm patients. Nor, given the facts before us, can there be any serious doubt that, if removed to Mexico, Petitioner,

---

[3] *Villegas* is not to the contrary. There, substantial evidence supported the conclusion that officials' actions were the product of a "misunderstanding of the nature of psychiatric illness." *Villegas*, 523 F.3d at 989. The record before us here does not support a similar conclusion, for the reasons stated herein. And, as the *Villegas* court itself recognized, "we must assess the conditions as they currently exist." *Id.*

7

who presents as manic and has been diagnosed with delusional disorder of a "[g]randiose type with bizarre content," is likely to be institutionalized and subjected to inhumane treatment rising to the level of torture. Accordingly, we remand solely for the agency to grant deferral of removal under CAT. *See Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1188 (9th Cir. 2020); *Haile v. Holder*, 658 F.3d 1122, 1133 (9th Cir. 2011).

**PETITION DENIED IN PART AND GRANTED IN PART.**