**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALIM S. URMANCHEEV, <br><br> Petitioner, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br> Respondent. | No. 21-664 <br><br> Agency No. A075-117-610 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 19, 2023
San Francisco, California

Before: SILER**, WARDLAW, and M. SMITH, Circuit Judges.

Petitioner Alim Urmancheev petitions for review of a final order issued by the

Board of Immigration Appeals (BIA) finding him removable for having committed

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable Eugene E. Siler, United States Circuit Judge for the Court of Appeals, 6th Circuit, sitting by designation.

an aggravated felony and denying his application for protection under the Convention Against Torture (CAT). We deny the petition for review.

We review questions of law de novo and the agency's factual findings for substantial evidence. *Kumar v. Holder*, 728 F.3d 993, 998 (9th Cir. 2013). The BIA's decision must be upheld if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (cleaned up). When the BIA independently reviews the record, as here, we review the BIA's decision but can refer to the findings of the Immigration Judge (IJ). *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010).

1.      The BIA properly determined that *Matter of Ibarra*, 26 I. & N. Dec. 809 (BIA 2016), applied retroactively to Petitioner's case. In *Ibarra*, the BIA concluded that a conviction under Cal. Penal Code § 211 constituted an aggravated felony theft as defined by 8 U.S.C. § 1101(a)(43)(G). We reached the same conclusion in *United States v. Martinez-Hernandez*, 932 F.3d 1198, 1205–07 (9th Cir. 2019).

Petitioner argues that the IJ and BIA should have applied the five-factor test outlined in *Montgomery Ward & Co. v. FTC*, 691 F.2d 1322 (9th Cir. 1982), to decide whether *Ibarra* applied retroactively. But "a change in law must have occurred before *Montgomery Ward* is implicated." *Olivas-Motta v. Whitaker*, 910 F.3d 1271, 1276 (9th Cir. 2018). And a new agency decision does not constitute a

change in law unless the decision "consciously overrules or otherwise alters its own rule or regulation, or expressly considers and openly departs from a circuit court decision." *Id*. at 1277 (quotations omitted). *Ibarra* was the first BIA decision holding that Cal. Penal Code § 211 constituted an aggravated felony theft. Thus, the BIA did not overrule precedent nor depart from a circuit court decision.[1]

2.        The BIA's denial of Petitioner's CAT claim was supported by substantial evidence. An applicant seeking CAT protection bears the burden of proving it is more likely than not that he would be tortured if removed to the proposed country of removal. 8 C.F.R. § 1208.16(c)(2). To establish the likelihood of future torture based on alleged past torture, "a petitioner must show that severe pain or suffering was specifically intended—that is, that the actor intend[ed] the actual consequences of his conduct, as distinguished from the act that causes these consequences." *Villegas v. Mukasey*, 523 F.3d 984, 989 (9th Cir. 2008).

Petitioner argues that he should be granted CAT protection because the Russian government's previous actions regarding his forced psychiatric

---

[1] In his reply brief, Petitioner argues that there is an intra-circuit split between our holdings in *Olivas-Motta* and *Miguel-Miguel v. Gonzales*, 500 F.3d 941, 951 (9th Cir. 2007). This argument is without merit because unlike in *Olivas-Motta*, in *Miguel-Miguel* we confronted a situation where the BIA "consciously overrule[d] or otherwise alter[ed] [the BIA's] own rule or regulation," *Olivas-Motta*, 910 F.3d at 1277, meaning that it was proper to apply the *Montgomery Ward* factors to decide if the precedent applied retroactively. *See Miguel-Miguel*, 500 F.3d at 951.

hospitalization were torturous. But substantial evidence supports the BIA's ruling that Petitioner's prior experiences were not torturous, as Petitioner did not demonstrate that any of the individuals involved acted with the intent to torture him. Poor conditions and "misunderstanding of the nature of psychiatric illness" do not constitute torture. *Villegas*, 523 F.3d at 989. Petitioner further argues that he is likely to face future torture based on his mental illness. However, as the IJ explained, Petitioner controls his mental health issues with medicine, has not been to the hospital for these issues since 2006 or 2008, and the medications he uses to control his mental illnesses are available in Russia.

Regarding Petitioner's religion, the IJ also explained that "[g]iven the low number of Jehovah's Witnesses with reported interactions with the government in relation to the total number of Jehovah's Witnesses in Russia [], Respondent's risk of harm due to his religion is slight. By extension, his risk of torture is even less likely." The IJ then included a statistical analysis of the small number of Jehovah's Witnesses—less than 1% of the Jehovah's Witness population in 2019—who were suffering at the hands of the Russian government because of their beliefs.

The IJ also found that Petitioner was unlikely to be tortured based on his prior political activism. The court noted that thirty years had passed since Petitioner was beaten by police for protesting. In that time, the government has changed, and Petitioner has returned to Russia multiple times and been involved in multiple anti-

government protests, without having been subject to torture. Accordingly, the IJ found that Petitioner did not meet his burden of proving that he is more likely than not to face torture if he returns to Russia. Based on this record, the BIA's decision was based on substantial evidence.

Lastly, Petitioner asserts that the agency failed to consider the aggregate risk of torture he would be subject to based on his religion, mental illnesses, and political activism. But the IJ considered this argument, writing, "the Court has considered his 'aggregate risk of torture from all sources,' and for the following reasons, concludes he has not established eligibility for protection under CAT." The IJ then provided a multi-page discussion of why none of Petitioner's arguments, separately or together, led the IJ to believe Petitioner was more likely than not going to suffer torture if removed.

The temporary stay of removal remains in place until the mandate issues. The motion for a stay of removal is otherwise denied.

**PETITION DENIED**.