**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2865
_____

LEROY ANGLOSON STUART,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
(A036-810-752)
Immigration Judge: Jason L. Pope
_____

Submitted Under Third Circuit LAR 34.1(a)
(October 7, 2022)

Before: HARDIMAN, SHWARTZ, and NYGAARD, *Circuit Judges*.

(Filed: October 20, 2022)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Leroy Stuart petitions for review of an order of the Board of Immigration Appeals finding him ineligible for waiver of removal under former § 212(c) of the Immigration and Nationality Act and denying his application for deferral of removal under the Convention Against Torture. We will deny the petition.

I

A native and citizen of Barbados, Stuart entered the United States as a lawful permanent resident in 1983. About ten years later, he was convicted of multiple armed bank robberies and was sentenced to more than forty-six years' imprisonment. In December 2020, after serving a federal sentence reduced by 18 U.S.C. § 3582(c)(1)(A), Stuart was transferred to Immigration and Customs Enforcement custody. The Department of Homeland Security charged Stuart as removable based on his federal convictions for bank robbery with a dangerous weapon in violation of 18 U.S.C. § 2113(d), and carrying and use of a firearm during a bank robbery in violation of 18 U.S.C. § 924(c)(1). The DHS also designated Stuart's § 2113(d) convictions as crimes involving moral turpitude and aggravated felonies of theft and violence.

Stuart conceded removability based on his firearms conviction, but he sought a waiver of inadmissibility under former § 212(c) of the INA. After a hearing, the Immigration Judge found Stuart removable because he had been convicted of an aggravated felony theft offense, an aggravated felony crime of violence, and two crimes involving moral turpitude. The IJ also determined Stuart was ineligible for a § 212(c) waiver because of his aggravated felonies.

After the hearing, Stuart applied for CAT relief, citing phone calls his family in Barbados received that threatened Stuart's life. Stuart asserted fear of being tortured by his former criminal associates "as revenge for things I did to them" and for engaging in homosexual acts. A.R. 693. Following another hearing, the IJ denied Stuart CAT relief, and the BIA affirmed. Stuart filed this petition before he was removed to Barbados on June 9, 2022.

II[1]

Stuart first argues the BIA erred when it found him ineligible for waiver of removal under § 212(c) of the INA. This argument fails for several reasons. As Stuart acknowledges at 43–44 of his opening brief, our decision in *United States v. Johnson*, 899 F.3d 191, 204 (3d Cir. 2018), forecloses his argument that his convictions under 18 U.S.C. § 2113(d) do not qualify as aggravated violent felonies. Even were that not the case, those convictions constitute aggravated theft felonies that also make him ineligible for § 212(c) relief. Stuart makes no argument on that point and he erroneously claims the BIA failed to rule on the issue. In fact, the BIA expressly affirmed the IJ's decision that Stuart committed disqualifying theft crimes. That ruling—combined with Stuart's failure to address the issue—is an independent reason to reject his § 212(c) argument. *Barna v. Bd. of Sch. Dirs.*, 877 F.3d 136, 147 (3d Cir. 2017) (explaining that we do not reach

---

[1] We have jurisdiction under 8 U.S.C. § 1252(a)(1). This appeal was timely filed within 30 days of the final order of removal. 8 U.S.C. § 1252(b)(1). Venue is also proper because Stuart's removal proceedings were completed in Elizabeth, New Jersey. 8 U.S.C. § 1252(b)(2).

forfeited issues absent exceptional circumstances).

III

Stuart next challenges the BIA's denial of CAT relief. He claims the IJ and BIA failed to make predictive factual findings, but the record shows otherwise. The IJ predicted—and the BIA affirmed—that Stuart would face some discrimination upon his return to Barbados. Although Stuart contends that neither the IJ nor the BIA reviewed what kind of discrimination he is likely to face, the IJ acknowledged Stuart's concerns relating to LGBT discrimination in Barbados. Two pages of the IJ decision recount—by general reference and specific citations—the country conditions evidence submitted by both parties. The BIA affirmed the IJ's consideration of these country conditions and supporting documentation.

Stuart accuses the IJ of ignoring evidence favorable to him. But the IJ acknowledged that LGBT persons are more vulnerable to crime and that Barbados criminalizes homosexual conduct. The IJ also balanced that law against generally improving conditions for LGBT persons, including that the law criminalizing homosexual conduct is not enforced. The IJ further weighed evidence of the existence of a pride parade and statements from the former attorney general making clear that LGBT people in Barbados should be protected. The BIA affirmed these findings of fact. In sum, the agency made sufficient predictive factual findings about the level of discrimination Stuart will face and those findings are supported by substantial evidence. *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020).

As for the threatening phone calls reported by Stuart's family, the agency found

4

the threats "too speculative" to justify relief. A.R. 4, 62. Stuart assumed the callers were his former criminal associates, but he could not confirm the identity or motives of the callers, or whether his former criminal associates were even living in Barbados. A letter provided by Stuart's brother also disclaimed knowledge of the callers' identities and speculated the unknown individuals may want to harm Stuart because of various grudges relating to Stuart's criminal past, including his association with a Rastafarian drug gang. The IJ's factual findings—and the conclusion that the threats were too speculative—were supported by substantial evidence. A.R. 62–65; *see also Denis v. Att'y Gen.*, 633 F.3d 201, 218 (3d Cir. 2011) (finding that unsupported speculation cannot demonstrate likelihood of torture).

Stuart also makes several arguments that the BIA decision was legally defective. None is persuasive. Stuart argues that the BIA failed to perform de novo review. But the BIA did conduct de novo review, citing to *Matter of R-A-F-*, 27 I. & N. Dec. 778, 779 (A.G. 2020). The BIA did not have to explain its application of the standard in detail. *See Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994). Nor was the BIA required to analyze government acquiescence, as here there was no finding of a likelihood of torture. *See Myrie v. Att'y Gen.*, 855 F.3d 509, 515–16 (3d Cir. 2017).

Finally, Stuart contends the agency ignored his fears of psychological torture, and failed to review the evidence cumulatively. Both arguments fail because the agency reviewed the record, grasped Stuart's claims, and rendered findings and a legal conclusion supported by the record.

\* \* \*

For the reasons stated, we will deny Stuart's petition for review.