NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2468
_____

WILFRED OLUFEMI WILLIAMS,
                                                            Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA
_____

On Petition for Review of an
Order of the Board of Immigration Appeals
(Agency No. 060-230-075)

Immigration Judge: Jack H. Weil
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 18, 2023
_____

Before: GREENAWAY, JR., PHIPPS, and CHUNG, *Circuit Judges*.

(Opinion Filed: June 15, 2023)

_____

OPINION[*]
_____

_____

    [*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge.*

Petitioner Wilfred Olufemi Williams seeks review of an order entered by an immigration judge ("IJ") and affirmed by the Board of Immigration Appeals ("BIA") finding him ineligible for asylum and withholding of removal and denying protection under the Convention Against Torture ("CAT"). Williams makes three arguments in favor of review: (1) the IJ failed to apply the circumstance-specific approach when evaluating whether Williams's conviction qualified as an aggravated felony charge; (2) the BIA erred in determining that Williams was convicted of a particularly serious crime, thus making him ineligible for withholding of removal; and (3) the BIA erred in concluding that Williams is ineligible for deferral of removal under CAT. For the following reasons, we will deny Williams's petition for review.

## I. BACKGROUND

### A. Factual Background

Wilfred Olufemi Williams, a native and citizen of Nigeria, was admitted to the United States on October 5, 2008, as a lawful permanent resident. On August 10, 2017, he pled guilty to conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). The District Court sentenced him to 48 months imprisonment. On March 8, 2021, the Department of Homeland Security served Williams with a Notice to Appear ("NTA"), charging him with removability under 8 U.S.C. § 1227(a)(2)(A)(iii). On April 1, 2021, Williams, appearing in Immigration Court, admitted allegations related to his citizenship and admission to the United States and denied allegations that he was convicted of conspiracy to commit money laundering and the NTA's charges of

2

removability. On April 28, 2021, Williams applied for asylum, withholding of removal, and protection under CAT.

On July 7, 2021, the IJ conducted a merits hearing at which Williams presented testimony to support his application for asylum, withholding of removal, and protection under CAT. After considering the evidence, which included conviction documents and the plea agreement, as well as Williams's testimony, the IJ found Williams credible but denied relief from removal. Specifically, the IJ found that Williams's conviction constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(D) and (a)(43)(U). The IJ also found that the aggravated felony was a particularly serious crime, making Williams eligible for removal. The IJ denied Williams's CAT claim, finding that Williams failed to establish a clear probability of persecution or torture. Williams timely appealed the IJ's decision to the BIA. The BIA affirmed the IJ's decision and dismissed Williams's appeal.

Williams timely petitioned for review.

## II.   JURISDICTION AND STANDARD OF REVIEW

The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3). This Court has jurisdiction to review decisions issued by BIA under 8 U.S.C. § 1252, but that jurisdiction is limited to constitutional claims and matters of law. 8 U.S.C. § 1252(a)(2)(D). We nonetheless have jurisdiction over factual challenges in so far as they relate to Williams's CAT claim. *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1689, 1692 (2020).

When "the BIA affirms an IJ's decision and adds analysis of its own, we review

3

both the IJ's and the BIA's decisions." *Martinez v. Att'y Gen.*, 693 F.3d 408, 411 (3d Cir. 2012).

We review factual challenges to the CAT denial under the "highly deferential" substantial evidence standard where the agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah*, 140 S. Ct. at 1692; 8 U.S.C. § 1252(b)(4)(B).

## III. DISCUSSION

Williams argues that (1) the BIA erred in concluding that his conviction constitutes an aggravated felony; (2) the BIA concluded that he was not eligible for withholding of removal due to his conviction of a particularly serious crime as a result of his aggravated felony; and (3) the BIA erred in denying CAT deferral.

### A. Removal

#### i. Aggravated Felony

Under the Immigration and Nationality Act ("INA"), "[a]ny [non-citizen] who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). An "aggravated felony" is defined to include money laundering offenses "described in section 1956 of Title 18 . . . if the amount of the funds exceeded $10,000," 8 U.S.C. § 1101(a)(43)(D), or a "conspiracy to commit [that] offense," 8 U.S.C. § 1101(a)(43)(U). An aggravated felony also counts as a per se particularly serious crime for purposes of asylum, making that relief unavailable to a noncitizen convicted of such an offense. See *id.* § 1158(b)(2)(A)(ii), (b)(2)(B)(i). Williams argues that the BIA incorrectly applied the circumstance-specific approach in *Nijhawan v.*

4

*Holder*, 557 U.S. 29 (2009), in arriving at its conclusion that his conviction did not meet the $10,000 threshold that constitutes an aggravated felony.

To determine whether the amount of funds associated with his conviction exceeded $10,000, the agency must look to "the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion." *Nijhawan v. Holder*, 557 U.S. 29, 40 (2009). This "circumstance-specific" approach requires that the loss be "tethered" to the actual "offense of conviction" and be proven by clear and convincing evidence. *Id*. at 42; *Singh v. Att'y Gen.*, 677 F.3d 503, 508 (3d Cir. 2012).

The materials here show that the amount of funds associated with Williams's conviction exceeded $10,000. In the plea agreement, Williams pleaded guilty "to Count Two of the Indictment . . . which charge[d] him with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h)[.]" A.R. 423. In the restitution section of the plea agreement, Williams agreed to a Restitution Order "of the full amount of the actual, total loss caused by the offense" and agreed to the "amount of $394,617, payable to various individual victims[.]" A.R. 427. The presentence investigation report concluded that Williams was responsible for $397,617.[1] This information is clear and convincing evidence that the conspiracy's victims suffered losses that exceeded $10,000. Accordingly, we find that the agency correctly applied the circumstance-specific approach in concluding his conviction qualifies as an aggravated felony rendering him removable and ineligible for asylum.

---

[1] While there is a discrepancy in the amounts listed in the restitution order and presentence report, there is no dispute that the amount of funds is more than $10,000.

5

### ii. Particularly Serious Crime

Under the INA, those with aggravated felony convictions "sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime" and are not eligible for withholding of removal. 8 U.S.C. § 1231(b)(3)(B). For times when a crime is not per se particularly serious, Congress has authorized the Attorney General to determine "on a case-by-case basis, whether the facts and circumstances of a conviction also support concluding that an individual [non-citizen] committed a particularly serious crime." *Bastardo-Vale v. Att'y Gen.*, 934 F.3d 255, 262 (3d Cir. 2019) (en banc). This finding is made by "taking into consideration 'such factors as [1] the nature of the conviction, [2] the circumstances and underlying facts of the conviction, [3] the type of sentence imposed, and, most importantly, [4] whether the type and circumstances of the crime indicate that the alien will be a danger to the community.'" *Luziga v. Att'y Gen.*, 937 F.3d 244, 252 (3d Cir. 2019) (quoting *Matter of Frentescu*, 18 I. & N. Dec. 244, 247 (B.I.A. 1982)). Williams argues that the BIA erroneously determined that his conviction constitutes a particularly serious crime.

In affirming the IJ's determination that Williams's conviction constituted a particularly serious crime, the BIA properly evaluated the relevant criteria. The IJ properly considered the length of Williams's 4-year sentence, noting that it was below the statutory maximum. The IJ properly considered the nature of Williams's conviction, noting that William's crime involved 16 victims and spanned 12 states. Finally, the IJ properly considered the circumstances underlying Williams's conviction, noting that Williams accepted responsibility for his crime. The BIA, drawing a similar conclusion,

6

noted the length of the sentence, the nature of the conviction, and the circumstances underlying the conviction. We find no error in the BIA's conclusion that Williams's conviction was a particularly serious crime that makes him ineligible for withholding of removal. *See Sunuwar v. Att'y Gen.*, 989 F.3d 239, 250 (recognizing that the BIA has "broad discretion" to determine whether an offense is a particularly serious crime).

We will deny Williams's petition as to his claim for withholding of removal.

## B. CAT Protection

To be eligible for deferral of removal under CAT, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The applicant must show that they would be tortured by government officials or that "public officials will acquiesce in the likely treatment." *Quinteros v. Att'y Gen.*, 945 F.3d 772, 786 (3d Cir. 2019). To determine whether an applicant has met their burden, the IJ must answer: "(1) what is likely to happen to the petitioner if removed; and (2) does what is likely to happen amount to the legal definition of torture?" *Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017) (quoting *Kaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir. 2010)).

The IJ must "review[] the evidence and determine[] future events more likely than not to occur." *Id*. This is a factual finding that BIA reviews for clear error. *Id*. Then the IJ "determines whether the likely harm qualifies as torture under the governing regulations," a question the BIA reviews de novo. *Id*. To assess whether an applicant has established acquiescence, the IJ must (1) "make[] a factual finding or findings as to how public officials will likely act in response to the harm the [non-citizen] fears" and (2)

7

"assess [] whether the likely response from public officials qualifies as acquiescence under the governing regulations." *Id*. The BIA reviews the factual finding for clear error and the likely response de novo. *Id*. at 516-17.

Williams argues that the BIA erred in determining that he was not eligible for deferral of removal because there is sufficient evidence in the record to show that he will be tortured in Nigeria due to his diagnosis of PTSD.

The BIA correctly determined that Williams was not eligible for deferral of removal under CAT because he failed to show that he more likely than not would face harm amounting to torture upon his return to Nigeria. Williams claims that he will be individually targeted and forcibly institutionalized upon his return to Nigeria and not provided with adequate mental health care.[2] Williams provides no more than mere speculation as the basis for his assertion that he would be institutionalized in torturous conditions, and speculation is insufficient to meet his burden. *See In re J-F-F-,* 23 I. & N. Dec. 912, 917–18 & n.4 (A.G. 2006)*.* While Williams presented reports detailing the disturbing treatment of the mentally ill in Nigeria, evidence of substandard mental health care, without more, is insufficient to show a likelihood of torture. *See Matter of R-A-F-,* 27 I. & N. Dec. 778, 780-81 (A.G. 2020) (explaining that "poor conditions in . . . mental health facilities" is not enough to "evince the kind of specific intent to cause pain and suffering . . . required to establish torture.") The BIA did not err in concluding that the evidence did not compel the conclusion that he would more likely than not be subject to

---

[2] Williams admits that the potential harm is not particularized to him but general as "the treatment of mentally ill persons runs across the entirety of Nigeria." Pet.'r's Br. at 19.

torture upon his return to Nigeria. *See Kang v. Att'y Gen.*, 611 F.3d 157, 166 (3d Cir. 2010) (observing that, to warrant CAT relief, the evidence must compel the conclusion that the petitioner has met his burden.)

## IV.   CONCLUSION

For the preceding reasons, we will deny the petition for review.