# Matter of O-Y-A-E-, Respondent

*Decided by Board July 23, 2025[1]*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Evidence of human rights abuses in Venezuela and past threats to the respondent do not establish an individualized risk of torture where the last threat occurred years before the respondent left the country and the respondent was otherwise unharmed following the threats.

FOR THE RESPONDENT: Brent Johnson, Esquire, Tucson, Arizona

FOR THE DEPARTMENT OF HOMELAND SECURITY: Bret J. Engstrom, Assistant Chief Counsel

BEFORE: Board Panel: MULLANE, HUNSUCKER, and GOODWIN, Appellate Immigration Judges.

GOODWIN, Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals from the Immigration Judge's decision dated December 4, 2024, granting the respondent's request for protection under the regulations implementing the Convention Against Torture ("CAT").[2] The respondent, a native and citizen of Venezuela, opposes DHS' appeal and urges us to affirm the Immigration Judge's decision. The appeal will be sustained.

The respondent served in the Venezuelan military as a counterintelligence officer and lieutenant. She fears she will be beaten, kidnapped, detained, tortured and/or killed if she returns to Venezuela due to her refusal to comply

---

[1] Pursuant to Order No. 6380-2025, dated August 20, 2025, the Attorney General designated the Board's decision in *Matter of O-Y-A-E-* (BIA July 23, 2025), as precedent in all proceedings involving the same issue or issues. *See* 8 C.F.R. § 1003.1(g)(3) (2025). Editorial changes have been made consistent with the designation of the case as a precedent.

[2] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c), 1208.17(a) (2025); 8 C.F.R. § 1208.18(a) (2020).

with Commander Ortado's[3] order to falsify a document.[4]  The Immigration Judge first found that the serious nonpolitical crime and the persecutor bars applied to the respondent's case, rendering her ineligible for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and withholding of removal under the CAT.  *See* INA §§ 208(b)(2)(A)(i), (iii), 241(b)(3)(B)(i), (iii), 8 U.S.C. §§ 1158(b)(2)(A)(i), (iii), 1231(b)(3)(B)(i), (iii); 8 C.F.R. § 1208.16(d)(2) (2025).  However, the Immigration Judge found the respondent credible and found that she met her burden of proof for deferral of removal under the CAT.  *See* 8 C.F.R. § 1208.17(a) (2025).

Specifically, the Immigration Judge found that while the respondent did not experience torture in the past, Commander Ortado threatened to kidnap, imprison, torture, and kill the respondent and her family.  The Immigration Judge found that the respondent credibly testified that she personally witnessed the torture of another officer named Ozuna.  The Immigration Judge also found that even after the respondent sought retirement from the military, Commander Ortado sent an armed military unit to her home looking for her and threatened her.  The Immigration Judge further found that given the respondent's time in the military as a counterintelligence officer, the Venezuelan government possesses the necessary resources to readily identify her upon her return to Venezuela.  Based on this, and the country conditions showing torture and human rights abuses by the Venezuelan regime, the Immigration Judge found that upon her return to Venezuela, the respondent is more likely than not to be detained and subjected to torture by the Venezuelan military.  This appeal by DHS followed.

Although we review the Immigration Judge's factual findings for clear error, we review de novo whether the respondent has satisfied her ultimate burden of proof for deferral of removal under the CAT.  *See Matter of R-A-F-*, 27 I&N Dec. 778, 779 (A.G. 2020).  On appeal, DHS argues that the respondent's fear of torture by Commander Ortado or the Venezuelan military is too speculative.  DHS claims that the only evidence that would

---

[3]  The parties and the record refer to this same individual in various ways, such as Carlos Teran Hurtado, Carlos Turan Ortado, General Teran Hurtado, Commander Tehran Ortado, General Carlos Duran Ortado, and Commander Tehran.  We will refer to him as "Commander Ortado," as it appears on the transcript of the Immigration Judge's oral decision.

[4]  The respondent explained that the unlawful document she refused to sign off on was regarding the alleged plans of a division of the military that intended to commit a terrorist attack.

suggest "any future government involvement or acquiescence in possible torture of the respondent are actions that the respondent witnessed from Ortado while [s]he was a military commander prior to July 2021." DHS argues that the respondent admitted that she was not harmed or threatened after July 2021 until she fled in February 2024 and did not have any contact with Commander Ortado or any of his subordinates after July 2021. DHS also asserts that the respondent successfully retired from the military and that Commander Ortado did not express any negative feeling about it. DHS further argues that the Immigration Judge incorrectly stated that the visit from the military unit occurred "after she retired from the military or sought retirement from the military," but rather, the respondent testified that the visit was "the catalyst for her decision to retire."

The respondent submitted a brief opposing DHS' appeal, arguing that the Immigration Judge properly found that she is more likely than not to be subjected to torture by the Venezuelan military if she returns to Venezuela. In her brief, she reiterates that Commander Ortado is under European Union ("EU") sanctions due to his human rights violations as a Venezuelan military official, which she states is corroborated by the EU's own documentation in the record. The respondent further claims that in July 2021, after receiving the initial threats, she requested a transfer in her role; in response, the commander again threatened to imprison her if she did not comply with his orders and mockingly laughed at her, telling her that she "was not going anywhere." Her opposition brief states that it was after these incidents that the commander sent military units to the respondent's home on two occasions to threaten her, which led her to request her retirement.

The record shows the respondent testified that both times Commander Ortado's military unit went to her home were in July 2021, and it was after the second visit that she decided to request retirement. The record also confirms that the respondent testified that she was not harmed or threatened after July 2021. Therefore, the Immigration Judge clearly erred in finding that even after the respondent sought retirement from the military in July 2021, Commander Ortado sent an armed military unit to her home looking for her and threatened her again. *See* 8 C.F.R. § 1003.1(d)(3)(i) (2025); *see also Ridore v. Holder*, 696 F.3d 907, 911 (9th Cir. 2012) (explaining that the Board reviews factual findings only for clear error and must explain why it is finding clear error). The Immigration Judge rested his decision granting CAT protection, in large part, on this erroneous factual finding. As such, we also find clear error in the Immigration Judge's predictive factual finding that the respondent is more likely than not to suffer torture if she returns to Venezuela. *See Matter of R-A-F-*, 27 I&N Dec. at 779 (indicating that the

Immigration Judge's predictive factual findings as to what will happen to the respondent if returned are reviewed for clear error).

As discussed, the respondent was not threatened or harmed any time after July 2021, and she remained in Venezuela until February 2024 without any further contact from Commander Ortado or any of his subordinates. The record does not show that Commander Ortado or the Venezuelan military were looking for the respondent or were interested in her in any way after she officially retired from the military in December 2021. The respondent argues that she moved from place to place following her retirement in December 2021, but she testified that the military knew all her addresses, yet they did not look for her. Additionally, while the record shows that Commander Ortado was under EU sanctions and the country conditions depict human rights abuses by the Venezuelan government, this evidence is insufficient to show that the respondent would more likely than not experience torture upon return to Venezuela. *See* 8 C.F.R. § 1208.16(c)(2). Based on the foregoing, we find that the respondent has not established an individualized risk of torture in Venezuela. *See Dhital v. Mukasey*, 532 F.3d 1044, 1051 (9th Cir. 2008) (finding that an applicant for protection under the CAT "must demonstrate that he would be subject to a 'particularized threat of torture'" (emphasis omitted) (quoting *Lanza v. Ashcroft*, 389 F.3d 917, 936 (9th Cir. 2004))); *see also Tzompantzi-Salazar v. Garland*, 32 F.4th 696, 706–07 (9th Cir. 2022) (holding that although the country conditions evidence acknowledged crime and police corruption in Mexico generally, the evidence failed to show that the respondent faced a particularized, ongoing risk of future torture, and thus the agency did not err in concluding the respondent was not eligible for CAT relief).

Accordingly, we find that the respondent has not established she is eligible for deferral of removal under the CAT, and we reverse the Immigration Judge's decision granting the respondent's request for such relief. The following orders will be entered.

**ORDER:** The appeal is sustained.

**FURTHER ORDERED:** The respondent is ordered removed to Venezuela.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the

time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondents departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* INA § 274D, 8 U.S.C. § 1324d (2018); 8 C.F.R. § 280.53(b)(14) (2025).