# Matter of S-S-, Respondent

*Decided by Board June 16, 2025*[1]

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The Immigration Judge erred in concluding that the respondent would more likely than not be tortured in detention in Haiti where the Immigration Judge did not find that his detention would be long term and where the record did not establish that the harsh conditions in Haitian detention were specifically intended to torture.

FOR THE RESPONDENT:  Lisa M. Rosado, Esquire, Miami, Florida

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Evelin Mac Clay Migueles, Assistant Chief Counsel

BEFORE:  Board Panel:  MALPHRUS, Chief Appellate Immigration Judge; MULLANE and GOODWIN, Appellate Immigration Judges.

MULLANE, Appellate Immigration Judge:

The respondent is a native and citizen of Haiti.  The Department of Homeland Security ("DHS") appeals from an Immigration Judge's October 28, 2024, decision granting his application for deferral of removal under the regulations implementing the Convention Against Torture ("CAT").[2]  The respondent has filed a brief in opposition to the appeal.  The appeal will be sustained.

The respondent has been diagnosed with schizophrenia; schizoaffective disorder, depressive type; and major depressive disorder with psychotic symptoms.  He also has been hospitalized while detained and described as "actively psychotic with suicide ideations with a plan."  The Immigration Judge's finding that the respondent lacked sufficient mental competency to represent himself in removal proceedings under

---

[1]  Pursuant to Order No. 6319-2025, dated July 8, 2025, the Attorney General designated the Board's decision in *Matter of S-S-* (BIA Jun. 16, 2025), as precedent in all proceedings involving the same issue or issues.  *See* 8 C.F.R. § 1003.1(g)(3) (2025).  Editorial changes have been made consistent with the designation of the case as a precedent.

[2]  The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994).  8 C.F.R. §§ 1208.16(c), 1208.17 (2025); 8 C.F.R.§ 1208.18(a) (2020).

*Matter of M-A-M-*, 25 I&N Dec. 474 (BIA 2011), is not at issue on appeal. Likewise, the Immigration Judge's implementation of safeguards, including appointment of counsel, is not at issue.

The parties dispute whether the Immigration Judge erred in concluding that the respondent established that he more likely than not would be tortured upon removal to Haiti. To establish eligibility for CAT protection, the respondent must show that he more likely than not will be tortured if removed to Haiti. *See* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a); *see also Reyes Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004). The respondent fears: (1) as a mentally ill criminal deportee, he will be indefinitely detained upon removal to Haiti in conditions constituting torture; and (2) he will be tortured for being mentally ill, whether detained or not, by Haitian authorities, gangs, or members of the community, by or with the acquiescence of a public official.

Relying on the United States Department of State, Bureau of Democracy, Human Rights, and Labor, 2023 Country Reports on Human Rights Practices for Haiti and the testimony of expert witness Michelle Karshan, the Immigration Judge found that the respondent more likely than not would be detained upon removal to Haiti as a criminal deportee without family available to secure his release. The Immigration Judge further found that the respondent faced increased risk of subsequent arrest and detention as a criminal deportee, even after his release into Haiti.

The Immigration Judge did not determine whether the respondent's detention would more likely than not continue long term. *See Bonnet v. Garland*, 20 F.4th 80, 85–86 (1st Cir. 2021) (affirming the agency's determination that there was insufficient evidence that the respondent would be held in prolonged detention upon removal to Haiti). Along these lines, Ms. Karshan provided different scenarios of what could happen to the respondent upon return to Haiti, which included him being quickly released and being released upon a family member's payment of a bribe. Ms. Karshan also could not estimate how many criminal deportees were incarcerated or killed in 2022 or 2023. Anecdotal reports of some criminal deportees being indefinitely detained in torturous conditions are insufficient to establish that the respondent is more likely than not to have that experience. *See Matter of A-A-R-*, 29 I&N Dec. 38, 41–42 (BIA 2025). It is thus unclear whether the respondent will be subjected to the detention conditions that he claims will constitute torture. *See Matter of J-F-F-*, 23 I&N Dec. 912, 917–18, 918 n.4 (A.G. 2006) (emphasizing that the Immigration Judge must identify each step in the hypothetical chain of events that will lead to the alien's torture and that each link must be more likely than not to occur).

Moreover, even assuming arguendo that the respondent is detained long term upon removal, we conclude upon de novo review that the Immigration Judge erred in determining that the conditions of the respondent's detention would constitute torture. *See Matter of R-A-F-*, 27 I&N Dec. 778, 779 (A.G. 2020); 8 C.F.R. § 1003.1(d)(3)(ii) (2025). The respondent's allegations about the conditions he would face in long-term detention are similar to the conditions that we considered in *Matter of J-E-*, 23 I&N Dec. 291 (BIA 2002). In that case, the respondent presented articles confirming the assessment of the United States Department of State that prison conditions in Haiti were inhumane. *Matter of J-E-*, 23 I&N Dec. at 293. We concluded that although Haitian authorities were intentionally detaining criminal deportees in knowingly substandard detention facilities, the respondent did not show that they were intentionally and deliberately maintaining such conditions to inflict torture. *Id*. at 301. The record instead demonstrated that Haitian prison conditions were "the result of budgetary and management problems as well as the country's severe economic difficulties." *Id*. The record also showed that the Haitian government freely permitted human rights groups to enter detention settings. *Id*. We therefore concluded that the respondent had not demonstrated that the inhumane prison conditions were "*specifically intended* to inflict severe pain or suffering," as required to constitute torture under the regulations. *Id*. at 300–01.

In this case, the respondent presented similar evidence of dangerous and unsanitary detention conditions in Haiti. The Immigration Judge did not find that public officials are "intentionally and deliberately creating and maintaining [harsh detention] conditions" that the respondent could be exposed to for the specific purpose of inflicting pain or suffering. *Matter of J-R-G-P-*, 27 I&N Dec. 482, 484 (BIA 2018) (emphasis omitted) (quoting *Matter of J-E-*, 23 I&N Dec. at 301). Rather, the Immigration Judge's finding, based on Ms. Karshan's testimony, that "prison guards and police have the same lack of understanding of mental illness that is widespread among Haitian society" shows a lack of specific intent to torture mentally-ill detainees. The instant case is therefore indistinguishable from *Matter of J-E-*. The respondent's failure to show that Haitian officials are intentionally and deliberately creating and maintaining the harsh detention conditions that he fears for the specific purpose of inflicting severe pain or suffering warrants reversal of the grant of his application for CAT protection. *See Matter of A-A-R-*, 29 I&N Dec. at 43; *cf. Jean-Pierre v. U.S. Att'y Gen.*, 500 F.3d 1315, 1324–27 (11th Cir. 2007) (remanding for additional analysis of whether the respondent would specifically and individually be singled out for torture).

In addition, the Immigration Judge did not evaluate an IOM U.N. Migration report stating that the organization provides counseling,

medication, and bus money to deportees upon arrival in Haiti.  Ms. Karshan further admitted that deportees sometimes receive necessary medication.  As discussed, the respondent also has not shown that Haitian authorities maintain inhumane detention conditions with the specific intent of torturing detainees.  *See Matter of J-E-*, 23 I&N Dec. at 300–01.  We therefore reverse, as clearly erroneous, the Immigration Judge's findings that the respondent is more likely than not to be:  (1) unable to receive medical treatment; (2) detained as a result; and (3) tortured in detention because he exhibits mental health symptoms.  *See Matter of J-F-F-*, 23 I&N Dec. at 917-18, 918 n.4; *see also Matter of R-A-F-*, 27 I&N Dec. at 779 (holding that while the Board reviews Immigration Judge's predictive findings about what is likely to happen for clear error, whether the predicted outcome satisfies the legal definition of torture is a legal determination).  Anecdotal reports of some instances of people having been tortured in detention in Haiti, although deplorable, are insufficient to show that the respondent is more likely than not to experience harm rising to that level.  *See Matter of A-A-R-*, 29 I&N Dec. at 41–42; *Matter of J-E-*, 23 I&N Dec. at 303–04.

Regarding the respondent's fear of being tortured outside of a detention setting in Haiti, the Immigration Judge found that the respondent is vulnerable to being tortured by members of the community because his mental health conditions make it likely that he will exhibit erratic and abnormal behavior.  The Immigration Judge did not identify each step in a hypothetical chain of events that would lead to the respondent's torture in the community and did not find that each event is more likely than not to occur.  *See Matter of J-F-F-*, 23 I&N Dec. at 917–18, 918 n.4.  The Immigration Judge's finding that the respondent would be "vulnerable" to torture is insufficient, as the respondent bears the burden of showing that he more likely than not will be tortured upon removal to Haiti.  *See Reyes Sanchez*, 369 F.3d at 1242; 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a); *see also Matter of N-N-B-*, 29 I&N Dec. 79, 80 (BIA 2025) (concluding that in finding the respondent "could be" subject to torture, the Immigration Judge applied the wrong legal standard).  Further, generalized evidence that some gangs have ties to politicians and police in Haiti is insufficient to establish that the police cannot or will not help the respondent in his individual case, as required for him to prove acquiescence.  *See Matter of M-S-I-*, 29 I&N Dec. 61, 64 (BIA 2025).

Overall, we conclude that the Immigration Judge factually and legally erred in determining that the respondent established that he more likely than not would be "tortured" by or with the acquiescence (including the concept of willful blindness) of a public official of the Haitian government upon removal.  *See Reyes Sanchez*, 369 F.3d at 1242;

8 C.F.R. §§ 1208.16(c)(2), 1208.18(a); *see also Matter of Z-Z-O-*, 26 I&N Dec. 586, 590 (BIA 2015) (holding that an Immigration Judge's predictive findings of what may or may not occur are reviewed for clear error). We therefore will sustain DHS' appeal and vacate the Immigration Judge's decision granting the respondent's application for deferral of removal under the CAT. The respondent shall be removed to Haiti pursuant to the Immigration Judge's order of removal.

**ORDER:** The appeal is sustained.

**FURTHER ORDER:** The Immigration Judge's October 28, 2024, decision granting the respondent's application for deferral of removal under the CAT is vacated.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d (2018); 8 C.F.R. § 280.53(b)(14) (2025).